UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIRWAIR INTERNATIONAL LTD., <br> Plaintiff, <br> v. <br> PULL & BEAR ESPANA SA, et al., <br> Defendants. | Case No. 19-cv-07641-SI <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> Dkt. No. 27 |

Before the Court is the motion by defendant Pull & Bear España, S.A. ("Pull & Bear") to dismiss for lack of personal jurisdiction. Dkt. No. 27. Pursuant to Civil Local Rule 7-1(b) and General Order 72, the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the May 8, 2020 hearing. Having considered the papers submitted and for good cause shown, the Court GRANTS Pull & Bear's motion to dismiss without leave to amend.

**BACKGROUND**

Plaintiff AirWair International Ltd. is a wholly-owned subsidiary of United Kingdom company Dr. Martens AirWair Group Ltd. (collectively "AirWair"). Dkt. No. 22, ¶ 1 (Am. Compl.). In this action, AirWair brings trademark infringement, trademark dilution, and unfair competition claims under federal and California state law against two defendants. *Id*. ¶¶ 45-71.

Defendant Pull & Bear is a Spanish company "owned by international fashion-retailer Inditex" and allegedly infringing AirWair's intellectual property rights by marketing, distributing, offering for sale, and selling shoes that unlawfully copy Dr. Martens' trade dress. *Id*. ¶¶ 2, 26-27.

Defendant ITX USA, LLC ("ITX") is allegedly "a United States sister company or other affiliate" of Pull & Bear, domiciled in New York. *Id*. ¶ 3. Plaintiff alleges ITX "'oversees the [Pull

& Bear] e-commerce business' in the United States" and "operates [Pull & Bear's] U.S.-facing website selling a broad range of clothing and footwear" under "Pull & Bear's express direction and with Pull & Bear's substantial oversight." *Id*. ¶¶ 5-6.

Pull & Bear moves to dismiss the action in its entirety, arguing the Court lacks jurisdiction because Pull & Bear does not distribute goods, market, or advertise in California or the U.S. Dkt. No. 27 at 9 (Mot. to Dismiss). Defendant ITX does not join the motion.

In the Amended Complaint, AirWair's substantive allegations establishing specific personal jurisdiction over Pull & Bear in California are:

> [T]he Pull & Bear Spain-facing website informs customers that they may purchase products online from the United States. . . . [T]o the extent ITX alone manages some portion of Pull & Bear's U.S.-facing self-branded website, accessible at https://www.pullandbear.com/us, Pull & Bear, alone or in collusion with ITX, is responsible for setting the product offerings, prices, and preparing the marketing materials and photos used on [the website]. Such control is evidenced by the indistinguishability between the U.S.-facing [screenshot] and Spain-facing [screenshot] websites, the latter of which is not managed in any part by ITX. . . . Defendants also advertise in the United States through Facebook [web address], Instagram [web address], and Twitter [web address]. Through these popular channels, Defendants market and promote Pull & Bear-branded products, including the infringing footwear, in California, and throughout the United States. Defendants have a domain name that is specifically targeted and purposefully directed to United States residents. Orders submitted on the website are priced in U.S. dollars and ship to the United States, including California. AirWair is informed and believes that the Pull & Bear-branded infringing footwear has been regularly sold in California and in the Northern District of California.[1] . . . AirWair is further informed and believes, based on the presence of a physical return location in the United States, that Pull & Bear conducts substantial business and sales in the United States and California.

Dkt. No. 22, ¶¶ 29, 32-34 (Am. Compl.). AirWair also alleges purposeful direction at California consumers based on the Pull & Bear website's description of its physical "store design as taking the 'California concept to a new level, drawing inspiration from the iconic atmosphere of Palm Springs and other settings from the American West Coast,'" which is further detailed in an article describing Pull & Bear's "California-style" flagship retail store in Paris, France. *Id*. ¶ 36; Dkt. No. 22-1, Ex. 17. Plaintiff's opposition to the instant motion alleges additional facts of a licensing

---

[1] The only evidence in support of this are two receipts attached to the Amended Complaint. See Dkt. No. 22-1, Ex. 7. One is a "commercial invoice" from ASOS, a U.K. company not named in this action, for shipping a Pull & Bear shoe to San Francisco; the other is a receipt for three pairs of shoes from Pull & Bear, with no shipping or billing information to indicate the shipment's destination.

partnership between UCLA and Pull & Bear leading to a physical shop on campus and a "#UCLAxPullandBear Instagram show[ing] dozens of UCLA students wearing Pull & Bear apparel." Dkt. No. 33 at 11 (Opp'n); see Dkt. No. 33-1, Ex. A (Yocum Decl. in Supp. of Opp'n).

Alternatively, AirWair asserts this Court can exercise personal jurisdiction over Pull & Bear based on an alter ego theory. Dkt. No. 33 at 20 (Opp'n). AirWair contends Pull & Bear and ITX are "intertwined with respect to Pull & Bear brand's presence in the United States market" based on the terms and conditions page of the U.S.-facing Pull & Bear website, which includes a consumer rights notice for California users, and directs such users to contact ITX with inquiries. Dkt. No. 22, ¶ 28 (Am. Compl.). The opposition alleges additional facts that "ITX's very few employees are also employed by related entities, and half appear to reside in Spain. AirWair's research revealed the following ITX officers, who, not coincidentally, have served at least one concurrent role with a Pull & Bear-related company." Dkt. No. 33 at 21 (Opp'n). Four ITX corporate officers are identified: one is "also a director at Pull & Bear UK," and the other three "also hold[] or held at least one other position with Inditex or an Inditex subsidiary" as President, director, Managing Director, or CEO. *Id.*; Dkt. No. 33-1, ¶ 16 (Yocum Decl. in Supp. of Opp'n).[2]

AirWair asserts this Court can also exercise personal jurisdiction over Pull & Bear on a nationwide basis under the federal long-arm statute. Dkt. No. 33 at 23 (Opp'n). AirWair does not contest that this Court has no general personal jurisdiction over Pull & Bear. See Dkt. No. 27 at 9 (Mot. to Dismiss).

## LEGAL STANDARD

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "The court may consider evidence presented in

---

[2] The opposition describes one of the officers as a "director at Inditex and associated with Pull & Bear Espana, and dozens of other related entities," but the declaration from which this information is drawn only describes that officer as a "director at Inditex, and an advisor at potentially dozens of Inditex-related entities," with no mention of Pull & Bear España. Compare Dkt. No. 33 at 21 (Opp'n), with Dkt. No. 33-1, ¶ 16 (Yocum Decl. in Supp. of Opp'n).

3

affidavits to assist it in its determination." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (citation omitted), abrogated on other grounds as recognized in *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017). In a personal jurisdiction analysis, the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (internal quotation marks omitted). However, where the parties' affidavits conflict factually, the court must resolve them in plaintiff's favor. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). If the court does not conduct an evidentiary hearing, the plaintiff need only make a prima facie showing of facts supporting personal jurisdiction to avoid dismissal. *Id*.

If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

### I.    Specific Personal Jurisdiction in California

As "California's long-arm statute [Cal. Civ. Proc. Code § 410.10] allows the exercise of personal jurisdiction to the fullest extent permissible under the U.S. Constitution," a district court need only determine whether the exercise of jurisdiction comports with federal due process requirements. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Courts distinguish between general jurisdiction over a defendant who is "essentially at home in the forum [s]tate," and specific jurisdiction over a defendant with "certain minimum contacts" with the forum state. *Id*. at 126-27 (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 923 (2011)). To establish minimum contacts, the Ninth Circuit applies a three-pronged analysis: (A) the defendant must either "purposefully avail" himself of the privilege of conducting activities in the forum, or "purposefully direct his activities" toward the forum; (B) the plaintiff's claim must "arise[] out of or relate[] to the defendant's forum-related activities"; and (C) "the exercise of jurisdiction must

4

1    comport with fair play and substantial justice, i.e. it must be reasonable." *Boschetto v. Hansing*,
2    539 F.3d 1011, 1016 (9th Cir. 2008) (citation omitted).  Purposeful availment "is typically action
3    taking place in the forum," whereas purposeful direction "generally consists of action taking place
4    outside the forum that is directed at the forum." *Pebble Beach*, 453 F.3d at 1154 (citations omitted).
5    Moreover, the connection with the forum state must be created by the defendant's "suit-related
6    conduct."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  If not, "specific jurisdiction is lacking
7    regardless of the extent of a defendant's unconnected activities in the [s]tate." *Bristol-Myers Squibb*
8    *Co. v. Super. Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1781 (2017) (citation omitted) (emphasis added).
9    The plaintiff bears the burden of satisfying the first two prongs of the minimum contacts analysis.
10   *Schwarzenegger*, 374 F.3d at 802.  If the first two prongs are satisfied, the burden shifts to the
11   defendant to present a "compelling case" that exercising jurisdiction would be unreasonable under
12   the third prong.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985).

### A.  Purposeful Direction

AirWair does not allege Pull & Bear's infringing actions took place inside California; thus, the first prong can be met only if AirWair establishes that Pull & Bear purposefully directed its infringing actions toward California.  The purposeful direction analysis follows the "Calder effects" test: Pull & Bear must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

AirWair argues that Pull & Bear committed intentional acts expressly aimed at California by (1) creating an interactive Spain-facing website that directs U.S. consumers to the U.S.-facing website, which (2) allows U.S. consumers to buy and ship infringing footwear to the U.S.; (3) marketing on social media websites; (4) employing a "California concept" in its retail stores; and (5) entering a licensing agreement and social media campaign with UCLA and opening a shop on the UCLA campus.

#### 1. Intentional Act

As an initial matter, the Court rejects the allegations concerning Pull & Bear's licensing partnership with UCLA and the #UCLAxPullandBear social media campaign as irrelevant to the specific jurisdiction analysis, since those allegations concern the sale of clothing and not the "suit-related conduct" of selling the allegedly infringing shoes. *See Walden*, 571 U.S. at 284; *Bristol-Myers Squibb*, 137 S. Ct. at 1781 ("[E]ven regularly occurring sales of a product in a [s]tate do not justify the exercise of jurisdiction over a claim unrelated to those sales") (*quoting Goodyear*, 564 U.S. at 932 n.6).[3]

Second, AirWair does not dispute that it is ITX, not Pull & Bear, operating the U.S.-facing website. See Dkt. No. 22, ¶ 6 (Am. Compl.). Rather, AirWair seeks to impute agency by alleging that the website is operated by ITX at "Pull & Bear's express direction and with Pull & Bear's substantial oversight." *Id*.

In general, a third party's contacts with the forum state may not be imputed to a defendant for general jurisdiction analysis. Whether such contacts may satisfy the requirements of specific jurisdiction has not been decided by the Supreme Court, but the Ninth Circuit has provided guidance directly on point. In *Williams*, 851 F.3d at 1023 (*citing Daimler*, 571 U.S. at 135 n.13), the Ninth Circuit held it could not exercise specific personal jurisdiction over a Japanese corporation based on that corporation's subsidiary's contacts with California. *Williams*, 851 F.3d at 1023. There, a foreign manufacturer of motors owned a foreign subsidiary that imported and marketed those motors to California. *Id*. at 1019. Assuming that "some standard of agency" continued to be relevant, the court looked to the "fundamental tenets" of agency: "under any standard for finding an agency relationship, the parent company must have the right to substantially control its subsidiary's activities." *Id*. at 1024-25 (citations omitted). Appellants failed to allege the parent company had the right to control its subsidiary's activities and the court found no purposeful direction. *Id*.

---

[3] For the same reason, many of the cases AirWair cites for persuasive authority are not factually analogous. See, e.g., *Levi Strauss & Co. v. J. Barbour & Sons Ltd.*, 2019 WL 1117533, at *1, *5 (N.D. Cal. Mar. 11, 2019) (finding purposeful direction in website telling consumers where in California to purchase defendant's products, where infringing item was an identifying tab on all such products).

Here, AirWair has not alleged facts establishing such agency. AirWair attempts to support its conclusory allegation that ITX operates the website at "Pull & Bear's express direction and with Pull & Bear's substantial oversight" by showing a side-by-side comparison of the U.S.-facing website with the Spain-facing website. Dkt. No. 22, ¶ 6, 32 (Am. Compl.). That one is designed to mirror the other in aesthetic, photos, product offerings, and prices suggests some degree of cooperation or coordination. But it fails to establish that the company behind one website has "the right to substantially control" the activities of the company behind the other. *See Williams*, 851 F.3d at 1024-25.[4] Assuming the relevance of an agency standard to the specific jurisdiction analysis, the Court does not find these allegations sufficient to impute agency to Pull & Bear for ITX's operation of the website.

Therefore, the only remaining allegations of intentional acts concern (1) the Spain-facing website directing U.S. consumers to the U.S.-facing website; (2) the advertising on social media platforms; and (3) the "California concept" employed in Pull & Bear's retail stores. Because Pull & Bear has not disputed that it operates the Spain-facing website, the Court finds that these are intentional acts committed by Pull & Bear.

### 2. Express Aiming

AirWair has failed to allege that any of these acts are expressly aimed at the forum state of California. The alleged online activities fail to distinguish between California in particular and the United States at large. For instance, the Spain-facing website "informs customers that they may purchase products online from the United States." Dkt. No. 22, ¶ 28 (Am. Compl.); see Dkt. No. 22-1, Ex. 15 (Spanish FAQ page listing nearly three dozen countries from which customers may order Pull & Bear products, including the U.S.). But this falls short of alleging that the target audience is consumers in California, rather than the U.S. The opposition introduces an additional

---

[4] The cases AirWair cites are readily distinguishable. *See AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1230 (N.D. Cal. 2014) (alleging that foreign company provided "ongoing support and oversight" to a U.S. company to whom it had licensed its intellectual property to exclusively import, distribute, and sell products in the forum state); *Avaya Inc. v. Pearce*, 2019 WL 6311383, at *1 (N.D. Cal. Nov. 25, 2019) (alleging theory "that each defendant is . . . the agent and alter ego of the other defendants"). The Court discusses AirWair's alter ego theory *infra*.

7

allegation that the Spain-facing website "automatically directs California consumers to a site where they can purchase Pull & Bear apparel online for shipping to California." Dkt. No. 33 at 11 (Opp'n). The website referred to is the U.S.-facing website; although California consumers are necessarily in the U.S., that does not mean the automatic redirection targets California in particular.

The same is true of Pull & Bear's activities on Facebook, Instagram, and Twitter, through which AirWair alleges Pull & Bear markets and promotes its products "in California, and throughout the United States." Dkt. No. 22, ¶ 33 (Am. Compl.). Once again, the fact that these social media platforms may be accessed by consumers in the U.S. who happen to be in California does not demonstrate that the marketing is expressly aimed at California. *Cf. Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011) (finding express aiming where copyrighted celebrity photos were used on "very popular website with a specific focus on the California-centered celebrity and entertainment industries" with "advertisements directed to Californians," where contents of website's "economic value turns, in significant measure, on its appeal to Californians").

The employment of a California "concept" in retail stores also fails to demonstrate express aiming. The description of Pull & Bear's California-style retail shops outside the U.S. does not suggest that the sale of infringing shoes from those shops, or the sale of infringing shoes from websites describing those retail shops, is expressly aimed at California consumers. The contrary would appear true: that a California aesthetic is being used to aim a product at consumers in Paris, France and wherever else Pull & Bear has established such retail stores.

Therefore, this Court finds Pull & Bear has not committed any acts of expressing aiming at the forum state of California, and thus, under the Calder effects test, Pull & Bear has not purposefully directed any infringing activities at California.

### 3. Foreseeable Harm

Because the Court does not find Pull & Bear has purposefully directed activity toward California, it need not address the question of whether the harm was foreseeable.

### B. Arising Out of Forum-Related Activities

Because there is no theory under which the Court can find that Pull & Bear purposefully directed its activities toward California, the Court need not address whether this lawsuit arises out of such activities.

### C. Fair Play and Substantial Justice

Even if AirWair could establish purposeful direction, Pull & Bear has met its own burden: proving that the exercise of jurisdiction here would not comport with fair play and substantial justice. The following factors are weighed: "(1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Dole Food*, 303 F.3d at 1114. No single factor is dispositive. *Ziegler v. Indian River Cty.*, 64 F.3d 470, 475 (9th Cir. 1995).

**Extent of Purposeful Injection**. Because AirWair could not establish purposeful direction, the first factor weighs in Pull & Bear's favor.

**Burden to Defendant Defending in Forum**. Where both parties are foreign corporations facing equal burdens to litigate in the forum, as is the case here, the second factor tips to the defendant. *See Ziegler*, 64 F.3d at 475 (*citing Terracom v. Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995) (where burden on defendant and witnesses to travel to California was as great as burden on plaintiff and witnesses to travel to Kentucky, factor favored defendant)).

**Extent of Conflict with Sovereignty of Defendant's State**. Pull & Bear asserts that exercising jurisdiction conflicts with Spanish sovereignty. However, AirWair contends that adjudicating U.S. trademark infringements under U.S. federal law is not likely to conflict with Spanish laws. Because Pull & Bear's assertion is conclusory, the third factor favors AirWair.

**California's Interest in Adjudicating Dispute**. Since the relevant allegations of infringement are not based on Pull & Bear's activities but rather those of U.S. corporation ITX,

9

1   California has no significant interest in the dispute between AirWair and Pull & Bear, both foreign
2   corporations. Although generally "California has a strong interest in discouraging trademark
3   infringement injuries that occur within the state," this is certainly not a case "in which a California
4   company is used to perpetuate trademark infringement." *Schultz*, 73 F. Supp. 3d at 1240. The fourth
5   factor favors Pull & Bear.

**Efficient Judicial Resolution**. The fifth factor of efficiency is evaluated by looking "primarily at where the witnesses and the evidence are likely to be located." *Ziegler*, 64 F.3d at 475-76 (citation omitted). Pull & Bear is domiciled in Spain; ITX is domiciled in New York; AirWair is domiciled in the U.K.; and the relevant allegations of infringement occur online. This factor is neutral as to either party, perhaps tipping slightly toward Pull & Bear in the absence of any parties or activities occurring in the forum state.

**Importance of Forum to Plaintiff for Convenient and Effective Relief**. Although "neither the Supreme Court nor [the Ninth Circuit] has given much weight to inconvenience to the plaintiff," *Ziegler*, 64 F.3d at 476 (citation omitted), the Court agrees with AirWair that effective relief makes California an important forum, since AirWair's claims of trademark infringement and dilution arise under both federal and California state law causes of action. This factor favors AirWair.

**Existence of Alternative Forum**. "The plaintiff bears the burden of proving the unavailability of an alternative forum." *Ziegler*, 64 F.3d at 476 (citation omitted). AirWair conflates its argument about the existence of an alternative forum with effectiveness of relief, and has not met its burden of proving the unavailability of alternative forums such as Spain, the U.K., or New York, where defendant ITX is domiciled. This last factor favors Pull & Bear.

Only two of the seven factors are favorable to AirWair. Therefore, even if the Court were to find that Pull & Bear purposefully directed its activities at the forum state of California, the Court would not exercise specific jurisdiction because to do so would not comport with fair play and substantial justice.

## II. Alter Ego Theory

AirWair argues the Court may impute jurisdiction over Pull & Bear based on the theory that ITX is Pull & Bear's alter ego. The Ninth Circuit applies a two-part alter ego test: "a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Williams*, 851 F.3d at 1021; *see Vizio, Inc. v. LeEco V. LTD.*, 2018 WL 5303078, at *21 (C.D. Cal. July 27, 2018) (applying specific jurisdiction analysis where "a susidiary's [sic] contacts with a forum are imputed to the parent") (*citing Davis v. Metro Prods.*, Inc., 885 F.2d 515, 520 (9th Cir. 1989)). Some of the factors considered by courts include "inadequate capitalization, commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers." *See Vizio*, 2018 WL 5303078, at *18.

AirWair alleges that:

> (1) both companies are ultimately owned by Inditex; (2) Inditex owns both the Pull & Bear main website and the Pull & Bear U.S.-facing website, which are virtually identical; (3) ITX does not own the U.S. trademark for Pull & Bear; (4) ITX appears to have no assets and is reported as being a high credit risk; (5) ITX shares an office location with numerous other Inditex-related entities; and (6) even if ITX has some operational function with respect to the website, Pull & Bear directs and substantially controls ITX's activities, using ITX as a "mere conduit[,]" . . . supported by the fact that ITX's very few employees are also employed by related entities, and half appear to reside in Spain.

Dkt. No. 33 at 21 (Opp'n). The Court finds these allegations insufficient to support an alter ego relationship between Pull & Bear and ITX. The only cases cited by AirWair concern parent-subsidiary relationships, which is not alleged here. *See Vizio*, 2018 WL 5303078, at *17 ("whether LeLe Holding can be held liable for the conduct of its subsidiaries under Vizio's alter ego theory"); *Williams*, 851 F.3d at 1022 (appellants failed to make "factual allegations regarding the nature of the parent-subsidiary relationship" to support alter ego theory). Rather, AirWair attempts to triangulate Pull & Bear's relationship with ITX through their relationships to an alleged parent company, Inditex, which is not named as a defendant. AirWair also attempts to triangulate different

11

Pull & Bear entities by identifying one ITX officer who is also a director at Pull & Bear UK; however, because the defendant named in this action is Pull & Bear España, not Pull & Bear UK, this information is not relevant to the analysis. AirWair alleges only two facts unrelated to Inditex: ITX's non-ownership of Pull & Bear's U.S. trademarks, and ITX's lack of assets causing it to be a credit risk. However, these facts fail to demonstrate "such unity of interest and ownership that the separate personalities of the two entities no longer exist." *See Williams*, 851 F.3d at 1021. The remaining facts—ownership of the companies and their websites, and shared office locations and employees—merely establish a relationship between ITX and Inditex, rather than a relationship between ITX and Pull & Bear.

Therefore, the Court finds AirWair's alter ego allegations insufficient to impute specific jurisdiction to Pull & Bear.

### III. Nationwide Personal Jurisdiction

AirWair also argues the Court has nationwide jurisdiction under the federal long-arm statute, Fed. R. Civ. P. 4(k)(2). Three requirements must be met: "[1] the claim against the defendant must arise under federal law . . . [2] the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction . . . [3] the federal court's exercise of personal jurisdiction must comport with due process." *Pebble Beach*, 453 F.3d at 1159. The due process analysis is identical to that of the analysis above, "except here the relevant forum is the entire United States." *Id*.

No reported decision in the Ninth Circuit has conferred such jurisdiction. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007). In one unreported decision, nationwide jurisdiction was not conferred in the alternative, but in addition to specific personal jurisdiction in the forum state. *See Avvo Inc. v. Chang Liang*, No. CV-16-00892-PHX-DLR, 2016 WL 8738247, at *1 (D. Ariz. Apr. 4, 2016) (defendants hosted "complete counterfeit duplicate of Plaintiff's website" on servers in Phoenix, Arizona, sufficient for jurisdiction under Arizona's long-arm statute; moreover, the website "exclusively list[ed] attorneys located in the United States," indicating an express targeting of conduct and damage to the United States as a whole). The *Holland* court cited two of the rare cases in which other circuits have conferred nationwide jurisdiction.

*Holland*, 485 F.3d at 462. In one, the defendant had insured hundreds of shipments to the United States valued at over $130 million. *See Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651-52 (5th Cir. 2004) ("Given the volume of activity, we have no difficulty concluding that UMS has continuous and systematic contacts with the United States as a whole.") (citation omitted). In the other, defendants engaged in numerous conspiracies to attack the United States, with overt acts occurring within the country's borders. *See Mwani v. bin Laden*, 417 F.3d 1, 13 (D.C. Cir. 2005) ("plaintiffs thus amply made a prima facie showing that bin Laden and al Qaeda purposefully directed [their] activities at residents of the United States") (internal quotation marks and citation omitted).

While the first two requirements of the long-arm statute are easily met, AirWair's allegations are far from demonstrating a comparable level of contacts with the United States as a whole. On these facts, the Court cannot impose nationwide jurisdiction on Pull & Bear; nor are there facts indicating a need for limited jurisdictional discovery.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS Pull & Bear's motion to dismiss for lack of personal jurisdiction, without leave to amend.

**IT IS SO ORDERED**.

Dated: May 4, 2020

SUSAN ILLSTON
United States District Judge