UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIRWAIR INTERNATIONAL LTD., <br><br>Plaintiff, <br><br>v. <br><br>PULL & BEAR ESPANA SA, et al., <br><br>Defendants. | Case No. 19-cv-07641-SI <br><br>**ORDER RE: MOTIONS TO EXCLUDE AND CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br>Re: Dkt. No. 72, 73, 74, 76, 77, 78, 79, 80 |

Before the court are five Motions to Exclude, two Motions for Summary Judgment and a Motion to File Under Seal. Dkt. Nos. 72, 73, 74, 76, 77, 78, 79, 80. On July 1, 2021, the Court heard oral argument on the motions. For the reasons set forth below, the Court **DENIES** the motions to exclude Bertrand Guillaume, Robert L. Klein, and Susan Schwartz McDonald; **GRANTS** the motion to exclude David Franklyn; **DENIES IN PART** and **GRANTS IN PART** the motion to exclude Caroline de Baëre; **DENIES** ITX's motion for summary judgment; **DENIES IN PART** and **GRANTS IN PART** AirWair's motion for summary judgment; and **GRANTS** the motion to file under seal.

**BACKGROUND**[1]

Plaintiff AirWair International Ltd. is a wholly-owned subsidiary of United Kingdom company Dr. Martens AirWair Group Ltd. (collectively "AirWair"). Dkt. 22 ¶ 1 (First Amended Complaint ("FAC")). AirWair is engaged in the design, manufacture, marketing, and sale of Dr. Martens® footwear. *Id.* AirWair owns the following trade dress registrations: U.S. Trademark No. 2,437,750, U.S. Trademark No. 2,437,751, U.S. Trademark No. 2,102,468, U.S. Trademark No. 5,067,689, U.S. Trademark No. 5,067,692 (collectively "AirWair Trade Dress"). *Id.* at ¶ 17. These trade dress registrations generally relate to footwear designs. *Id.* The '750 mark consists of a yellow welt stitch located on the perimeter of footwear. *Id.* The '751 mark consists of the combination of yellow stitching in the welt area and a two-toned grooved sole edge. *Id.* The '468 mark consists of the design of an undersole. *Id.* The '689 mark consists of the design of a sole edge including longitudinal ribbing and a dark color band over a light color. *Id.* The '692 mark consists of longitudinal ribbing and a dark color band over a light color on the outer sole edge, welt stitching, and a tab located at the top back heel of footwear. *Id.* The '689 mark was registered in 2016 without an adverse office action in its prosecution history. Dkt. No. 84-5 at 2. Similarly, the '692 mark was also registered in 2016 without an adverse office action in its prosecution history. Dkt. No. 85-1 at 2.

Defendant ITX, USA, LLC ("ITX") manufactured, marketed, distributed, and sold on the Pull & Bear website four styles of shoes and boots that AirWair alleges are confusingly similar to and copy AirWair's Trade Dress to the point of infringement. *Id.* at ¶ 26-27. The total amount of sales for the four products at issue amounts to less than $3,000. Dkt. No. 80 at 1. Sales of the products ceased approximately two years ago. *Id.* at 2. In this suit, AirWair brings trademark infringement, trademark dilution, and unfair competition claims under both federal and California state law against defendant ITX. Dkt. No. 22 at ¶¶ 45-71.

On May 21, 2021, defendant and plaintiff filed the instant Motions to Exclude, Motions for Summary Judgment, and Motion to Seal. Dkt. No. 72 (AirWair's Motion to Exclude Susan

---

[1] The following facts are undisputed unless otherwise stated.

2

Schwartz McDonald); Dkt. No. 73 (AirWair's Motion to Exclude Caroline de Baëre); Dkt. No. 74 (AirWair's Partial Motion for Summary Judgment); Dkt. No. 76 (AirWair's Motion to File Under Seal); Dkt. No. 77 (ITX's Motion to Exclude David Franklyn); Dkt. No. 78 (ITX's motion to Exclude Bertrand Guillaume); Dkt. No. 79 (ITX's Motion to Exclude Robert. L. Klein); and Dkt. No. 80 (ITX's Motion for Summary Judgment).

**LEGAL STANDARD**

**I.     Motion to Exclude**

"[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Federal Rule of Evidence 702 permits the introduction of expert testimony only if: (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," (2) "the testimony is based on sufficient facts or data," (3) "the testimony is the product of reliable principles and methods," and (4) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The proponent of the expert testimony has the burden of proving the proposed testimony is admissible. *Lust ex rel. Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). "Although the district court must perform a gatekeeping function, a trial court 'not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability.'" *United States v. Gadson*, 763 F.3d 1189, 1202 (9th Cir. 2014) (citation omitted); see also *Daubert*, 509 U.S. at 597.

**II.    Motion for Summary Judgment**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and . . . is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters for which the non-moving party will bear the burden of proof at trial. The moving party need only

3

1  demonstrate to the Court an absence of evidence to support the non-moving party's case. *Id.* at 325.

2  Once the moving party has met its burden, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 324). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . [is] insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)(2).

**DISCUSSION**

First, the Court considers which, if any, experts should be excluded. Second, the Court considers the motions for summary judgment.

**I. Motions to Exclude**

    **A.    Plaintiff AirWair International Ltd.'s Motions to Exclude**

        **1.    Motion to Exclude Testimony of Susan Schwartz McDonald**

Dr. Susan Schwartz McDonald is the President and CEO of NAXION, "a century-old marketing research and consulting organization that advises companies on product development, brand strategy, and other strategic marketing activities." Dkt. No. 72-3 at 5 (Mot. to Exclude, Ex. B). Dr. McDonald was retained by ITX as a survey expert to offer a rebuttal survey and rebuttal

4

commentary on the survey conducted by AirWair's expert Mr. Klein. Dkt. No. 72 at 2 (Mot. to Exclude). Dr. McDonald's replication survey tested the likelihood of confusion between the Pull & Bear "White Platform Boot" and AirWair's Dr. Martens brand boot by conducting an online survey in which respondents were shown pictures of either the test or control boot and were asked "[w]hat company or brand do you believe sells or puts out this boot, or tell us if you don't know." Dkt. No. 72-3 at 2 Mot. to Exclude, Ex. B). Dr. McDonald's survey differed from Mr. Klein's in four main aspects: (1) Dr. McDonald used a different control boot, (2) situated by itself with a blank background, (3) tested two differently colored soles, black and brown, and (4) additionally added an open ended "Why?" question to the survey – generally asking why consumers gave the answer they did. *Id.* at 12-15. Dr. McDonald's survey produced a likelihood of confusion finding of between 3.4% and 17.6% for the brown-soled boot and a likelihood of confusion finding of between 1.0% and 15.2% for the black-soled boot. *Id.* at 17.

AirWair seeks to exclude Dr. McDonald from offering her rebuttal replication survey and rebuttal commentary, arguing her opinions are "fundamentally flawed, irrelevant to the case, and outside the scope of proper rebuttal testimony." *Id.* at 1. AirWair asserts Dr. McDonald's survey and opinions are irrelevant and unreliable because her survey tested likelihood of confusion with a materially altered version of plaintiff AirWair's trade dress. *Id.* at 7. AirWair further asserts Dr. McDonald's survey is irrelevant because it does not test post-sale confusion. *Id.* at 10. Finally, AirWair argues Dr. McDonald's replication survey is inadmissible as rebuttal evidence because it was not designed to rebut Mr. Klein's survey. *Id.* at 14. In response, ITX argues Dr. McDonald's rebuttal survey and report should not be excluded because (1) the survey and report are admissible as rebuttal evidence, (2) the survey used a proper control stimulus, and (3) the survey properly tested for post-sale confusion. Dkt. No. 88 at 9-13 (Opp'n).

Expert testimony is admissible only if it is both relevant and reliable. *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 141 (1999). "In trademark cases, surveys are to be admitted as long as they are conducted according to accepted principles and are relevant." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806 (9th Cir. 1997). Technical inadequacies in the survey bear on the weight of the evidence, not its admissibility. *Keith v. Volpe*, 858 F.2d 467, 480 (9th Cir. 1988) (citing *Prudential*

*Insurance Co. v. Gibralter Financial Corp.*, 694 F.2d 1150, 1156 (9th Cir. 1982). The majority view is to admit the survey and discount its probative value. *Prudential Insurance Co. v. Gibralter Financial Corp.*, 694 F.2d 1150, 1156 (9th Cir. 1982).

Dr. McDonald's survey is relevant to the issue of likelihood of confusion because it aims to directly measure whether consumers associate a boot made by ITX with one made by AirWair. While the parties may disagree whether the general placement and specific aspects of the boots shown to survey respondents render the survey inadequate, those inadequacies do not warrant inadmissibility of the entire testimony. Rather, these criticisms bear on the weight of the evidence, not its admissibility. *See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc.*, 618 F.3d 1025, 1037-38 (9th Cir. 2010) (concluding the survey was admissible despite shortcomings of the survey including failure to replicate real world conditions, suggestiveness, and counterintuitive results). The weight of a survey is an issue for a jury. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 122 (9th Cir. 2001) (concluding vague and general responses to a survey follow-up question were a matter for the jury to decide what weight to accord the survey). Thus, the exclusion of Dr. McDonald's testimony is unwarranted.

Accordingly, the Court DENIES the motion to exclude Susan Schwartz McDonald.

### 2. Motion to Exclude Testimony of Caroline de Baëre

Caroline de Baëre has thirty-four years of experience in the footwear industry primarily in the areas of "trend research, footwear design, product development, merchandising, market analysis, product purchasing, and sales management." Dkt. No. 73-1 at 2 (Mot. to Exclude, Whitworth Dec'l, Ex. A). Ms. de Baëre was retained by ITX to assess the AirWair Trade Dress and used her personal experience and knowledge of footwear to formulate her opinion of the AirWair Trade Dress. *Id.* at 5. Ms. de Baëre concluded that the elements of AirWair's Trade Dress "are so common in the footwear industry that no one manufacturer has the exclusive right to use the elements" and that ITX's footwear products do not infringe on AirWair's Trade Dress. *Id.*

AirWair seeks to exclude Caroline de Baëre from offering her opinion on likelihood of confusion, functionality, secondary meaning, and reputational harm. Dkt. No. 73 at 5 (Mot. to

Exclude). AirWair asserts this opinion should be excluded because Ms. de Baëre is not qualified to testify about likelihood of confusion because she is an expert in design and manufacturing of footwear, not an expert in consumer confusion, perception, or behavior. *Id.* AirWair further argues Ms. de Baëre did not employ a reliable methodology for her opinions because she used a side by side comparison as opposed to viewing the products alone. *Id.* at 10. Further, AirWair asserts Ms. de Baëre's opinions on functionality and secondary meaning are unreliable and irrelevant because she does not correctly analyze the trade dress and misapplies the controlling legal standards. *Id.* at 11. AirWair additionally asserts Ms. de Baëre's opinion with respect to reputational harm should be excluded because she does not provide a factual basis for that opinion. *Id.* at 21.

In response, ITX argues Ms. de Baëre's testimony is well founded and should not be excluded because she is qualified to testify on the likelihood of confusion, and her reference to side by side product images was proper. Dkt. No. 87 at 5 (Opp'n). ITX asserts Ms. de Baëre's opinions on functionality and secondary meaning are reliable and relevant, and she properly identified the relevant trade dress and applied the controlling legal standards. *Id.* at 8. ITX argues Ms. de Baëre correctly analyzed utilitarian functionality and her opinions regarding the secondary meaning of the AirWair trade dress are well founded and should not be excluded. *Id.* at 9. ITX additionally argues that Ms. de Baëre's opinion on reputational harm should not be excluded because her report illustrates that AirWair lacks valid trademark rights and therefore could not have suffered reputational harm. *Id.* at 14-15.

Rule 702 of the Federal Rules of Evidence provides that a witness may testify if she is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. ITX seeks to have Ms. de Baëre, a footwear expert, testify to her opinion on issues of trademark law. Specifically, Ms. de Baëre provides her opinion on the functionality of and secondary meaning acquired by the elements of AirWair's Trade Dress. Dkt. No. 73-1 at 5-6. Ms. de Baëre further opines on the similarity between the Pull & Bear Footwear and AirWair's Trade Dress and the likelihood of confusion. *Id.* at 6. Secondary meaning and likelihood of confusion are issues that go to the heart of trademark law.

Ms. de Baëre states that her experience "includes trend research, footwear design, product

7

1  development and manufacturing, merchandising, market analysis, product purchasing and sales
2  management." *Id.* at 1. Ms. de Baëre is clearly an expert in the design and manufacture of footwear
3  and has the required expertise to opine on the manufacturing techniques of footwear including those
4  employed by AirWair. Accordingly, the Court finds Ms. de Baëre's analysis of functionality is
5  admissible.

6  However, the Court does not find Ms. de Baëre's testimony regarding secondary meaning
7  to be admissible. Secondary meaning for trade dress means that a significant number of potential
8  customers associate the trade dress with a single source of the product. *Inwood Laboratories, Inc.*
9  *v. Ives Laboratories, Inc.*, 456 U.S. 844, 851 (1982). "Secondary meaning can be established in
10 many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity,
11 manner, and length of use of a mark; amount and manner of advertising; amount of sales and number
12 of customers; established place in the market; and proof of intentional copying by the defendant."
13 *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999).
14 Ms. de Baëre's report only analyzes the exclusivity factor. Dkt. No. 73-1 at 27. Further, Ms. de
15 Baëre states "I do not believe any of the factors above have been met by AirWair. Although I reached
16 my conclusions solely based on the above legal standards provided to me by ITX's counsel." *Id.* A
17 lack of secondary meaning can be established in many ways, but mere conjecture is not one of them.
18 Accordingly, the Court finds Ms. de Baëre's analysis of secondary meaning inadmissible.

19 Further, the Court does not find Ms. de Baëre's testimony regarding likelihood of confusion
20 to be admissible because Ms. de Baëre utilized a side-by-side comparison. A side-by-side
21 comparison is improper if that is not the way consumers encounter the product in the market. *See*
22 J.T. McCarthy, McCarthy on Trademarks and Unfair Competition § 23:59 (5th ed.). "It is axiomatic
23 in trademark law that 'side-by-side' comparison is not the test." *Levi Struss & Co. v. Blue Bell, Inc.*,
24 623 F.2d 817, 822 (9th Cir. 1980). The styles of footwear at issue in this suit were allegedly sold
25 only on the Pull & Bear-branded website. Dkt. No. 22 ¶ 27. The alleged infringing products and
26 AirWair's products were consequently not sold in the same channel of trade. It follows then that a
27 side-by-side comparison is improper because that is not how consumers would encounter the
28 products in the market. Therefore, the side-by-side comparison conducted by Ms. de Baëre is

8

1    improper and this portion of Ms. de Baëre's testimony should be excluded.

2    Accordingly, the Court GRANTS in part and DENIES in part the motion to exclude Caroline
3    de Baëre.

### B.   Defendant ITX USA, LLC's Motions to Exclude

#### 1.   Motion to Exclude Testimony of David Franklyn

Mr. David Franklyn holds a J.D. from University of Michigan Law School and is a professor of Law and Business at Golden Gate University, where he teaches courses on intellectual property law as well as marketing and survey design. Dkt. No. 77-1 at 1 (Mot. to Exclude, Bulger Dec'l, Ex. 1). Mr. Franklyn was retained by AirWair to opine upon the report of ITX's expert, Caroline de Baëre. Dkt. 77 at 1 (Mot. to Exclude). Mr. Franklyn concludes Ms. de Baëre's analysis was flawed for two reasons: (1) she "misrepresents the elements and misunderstands the construction" of AirWair's Trade Dress, and (2) she "incorrectly presumes that AirWair's entire trade dress is encompassed in the written description of the registrations." Dkt. No. 77-1 at 2. Mr. Franklyn further holds the opinion that AirWair's Trade Dress is "unambiguous, valid, and protectable." *Id.* at 3.

ITX seeks to exclude Mr. Franklyn on the basis that he cannot testify regarding legal conclusions and that he does not have relevant experience in the footwear industry – indeed, he has none. *See generally* Dkt. No. 77. In response, AirWair argues Mr. Franklyn is qualified and his opinions about Ms. de Baëre's report are supported by his experience as a professor of intellectual property law. Dkt. No. 90 at 1 (Opp'n). AirWair further argues Mr. Franklyn's testimony and report do not provide improper legal conclusions but rather critique de Baëre's methodology. Dkt. No. 90 at 4 (Opp'n).

Under Rule 702 of the Federal Rules of Evidence, a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify . . . if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Rule 702 imposes a special obligation upon a trial judge to ensure that testimony is not only relevant, but reliable. *Kumho Tire Co., Ltd. v. Carmichael,*

526 U.S. 137 (1999). Mr. Franklyn has extensive experience as an intellectual property law professor. Dkt. No. 77-1 at 1 (Bulger Dec'l, Ex. 1). However, Mr. Franklyn does not have experience regarding fashion and more specifically footwear, which is the subject of the present suit and the expert report to which he is offered to rebut. He does not teach on the subject of fashion law and he does not have experience working or consulting in the fashion industry.

"Resolving doubtful questions of law is the distinct and exclusive province of the trial judge." *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993). "Expert testimony is not proper for issues of law." *Crow Tribe of Indians v. Raciot*, 87 F.3d 1039, 1045 (9th Cir. 1996). "An expert cannot testify to a matter amounting to a legal conclusion." *U.S. v. Tamman*, 782 F.3d 543, 552 (9th Cir. 2015). Mr. Franklyn's expert report contains statements regarding the validity and enforceability of AirWair's Trade Dress. Dkt. No. 77-1 at 7 ("AirWair's trade dress is presumptively valid and enforceable.") Further, Mr. Franklyn's expert report contains statements regarding the compliance of AirWair's Trade Dress with USPTO requirements. *Id.* at 7-8 ("These registrations comport with the USPTO requirements.") These statements amount to legal conclusion.

Accordingly, the Court GRANTS the motion to exclude testimony of David Franklyn.

### 2. Motion to Exclude Testimony of Bertrand Guillaume

Mr. Bertrand Guillaume has twenty-three years of experience in the footwear industry encompassing "the entire footwear product process, from inception and market research, to merchandising, design, product development, pre-production and production" for a variety of footwear companies. Dkt. No. 78-1 at 1 (Mot. to Exclude, Bulger Dec'l, Ex. 1). Mr. Guillaume was retained by AirWair to provide an expert opinion in response to Caroline de Baëre's report. *Id.* at 2.

ITX seeks to exclude Mr. Guillaume from offering his opinion that AirWair's trade dress is not functional and has acquired secondary meaning. *See generally* Dkt. No. 78 (Mot. to Exclude). ITX asserts this opinion should be excluded because Mr. Guillaume's testimony is conclusory in nature and contains no facts or data concerning the alleged trade dress or an explanation of his

conclusions. *Id.* at 2. ITX asserts Mr. Guillaume's testimony fails to satisfy the expert testimony requirements of *Daubert* and Rule 702 for two reasons. *Id.* at 3. First, ITX asserts Mr. Guillaume's opinion on functionality fails to satisfy Rule 702 because his opinion is allegedly not based on any data and he didn't demonstrate he used any methodology. *Id.* at 3-4. Second, ITX asserts his opinion regarding secondary meaning is not helpful to the jury because he did not assess secondary meaning factors, his opinion is not based on data, or indeed on any methodology, and merely asserts conclusions. *Id.* at 4-6. In response, AirWair argues Mr. Guillaume's testimony as to both functionality and secondary meaning is admissible and satisfies Rule 702 because his testimony is helpful as well as being based on sufficient data and a proper methodology. Dkt. No. 89 at 4 (Opp'n).

Mr. Guillaume expressly states the methodology he used to assess functionality – "a feature is functional as a matter of law if it is 'essential to the use or purpose of the article or if it affects the cost or quality of the article.'" Dkt. No. 78-1 at 3. This is the exact test the Supreme Court has articulated as the proper test for assessing functionality of a trademark. *See TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23 (2001).

Mr. Guillaume then lists the *Disc Golf* factors as part of his analysis for functionality. Dkt. No. 78-1 at 3. The Ninth Circuit has affirmed the *Disc Golf* factor test is the appropriate functionality test in cases involving aesthetic trade dress claims for designs or layouts. *Millennium Laboratories, Inc. v. Ameritox, Ltd.*, 817 F.d 1123 (9th Cir. 2016). Mr. Guillaume further states "[t]he crucial question is 'whether the [] design itself, as the claimed protectable trade dress or mark, plays a functional role in the overall product.'" Dkt. No. 78-1 at 3. Mr. Guillaume takes this methodology directly from *Disc Golf Ass'n, Inc., v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998). Not only does Mr. Guillaume state the methodology which he utilized, his expert report proceeds to analyze each factor. Dkt. No. 78-1 at 5-19. ITX's first argument, that Mr. Guillaume did not use any methodology to assess functionality, is simply inaccurate. ITX's second argument that Mr. Guillaume did not base his opinion regarding secondary meaning on any methodology suffers from the same deficiencies as its first argument.

Accordingly, the Court DENIES the motion to exclude testimony of Bertrand Guillaume.

11

### 3. Motion to Exclude Testimony of Robert L. Klein

Mr. Robert L. Klein is the Chairman and Co-Founder of Applied Marketing Science, Inc., a market research and consulting firm. Dkt. No. 79-1 at 1 (Mot. to Exclude, Bulger Dec'l, Ex. 1). Mr. Klein has extensive survey and market research experience dating back to 1970. *Id.* Mr. Klein was retained by AirWair to conduct a likelihood of confusion survey comparing the Pull & Bear "White Platform Boots" and the AirWair "Jadon" boots. *Id.* at 2. Mr. Klein's survey found 41.4% of respondents identified the Pull & Bear "White Platform Boots" as AirWair boots, 26.1% identified the control boots as AirWair boots, resulting in a net confusion rate of 15.2%.

ITX seeks to exclude Robert L. Klein from offering his expert report and likelihood of confusion survey for four reasons: (1) he did not understand the trade dress, resulting in unreliable testimony, (2) he used an improper control, (3) he provided no methodologically sound basis for his conclusion, and (4) he failed to replicate real world conditions. *See generally* Dkt. No. 79 (Mot. to Exclude). In response, AirWair argues Mr. Klein has extensive survey experience and conducted an *Eveready* study. Dkt. No. 93 at 7 (Opp'n).

"In trademark cases, surveys are to be admitted as long as they are conducted according to accepted principles and are relevant." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806 (9th Cir. 1997). "[A]s long as they are conducted according to accepted principles . . . survey evidence should ordinarily be found sufficiently reliable under *Daubert*." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 n.8 (9th Cir. 1997).

Mr. Klein's study was "designed and conducted with generally accepted principles of survey research, as set forth in the Federal Judicial Center's Manual for Complex Litigation." Dkt. No. 79-1 at 3. Mr. Klein conducted an *Eveready* survey in which respondents were shown a single product and asked in an open-ended format what company or brand they believe sells or puts out the product. *Id.* at 5. This format is consistent with a proper *Eveready* survey. *See* J.T. McCarthy, McCarthy on Trademarks and Unfair Competition § 32:174 (5th ed.). The Court concludes the survey conducted by Mr. Klein conforms to accepted principles and is relevant. Although the parties disagree as to the adequacy of the control image, that is merely a technical inadequacy. Technical inadequacies in the survey bear on the weight of the evidence, not its admissibility. *Keith v. Volpe*, 858 F.2d 467,

480 (9th Cir. 1988) (citing *Prudential Insurance co. v. Gibralter Financial Corp.*, 694 F.2d 1150, 1156 (9th Cir. 1982). Therefore, total exclusion of Mr. Klein's testimony is unwarranted.

Accordingly, the Court DENIES the motion to exclude testimony of Robert L. Klein.

## II. Motions for Summary Judgment

### A. Defendant ITX USA, LLC's Motion for Summary Judgment (Dkt. No. 80)

ITX now moves for summary judgment on all six causes of action in the FAC, arguing AirWair's trade dress is unprotectable as a matter of law. ITX argues (1) the trade dress is generic, vague, and overbroad, (2) the trade dress is functional, and (3) the trade dress has not acquired secondary meaning. *See generally* Dkt. No. 80 (Mot. for Summary Judgment). AirWair notes, and ITX does not dispute, that two of AirWair's marks (the '750 and '751 marks) are incontestable, requiring denial of that portion of the ITX motion. AirWair further argues that ITX has not met its burden of proving the '689 or '692 marks are generic, functional, and have not acquired secondary meaning. *See generally* Dkt. No. 92 (Opp'n). The Court has determined that the ITX motion must be denied because of the existence of numerous disputes of material fact.

Because of the "intensely factual nature of trademark disputes," summary judgment is generally disfavored in trademark cases and should be granted "sparingly." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir.2012) quoting *Interstellar Starship Servs., Ltd. v. Epix Inc.*, 184 F.3d 1107, 1109 (9th Cir.1999). Despite this disfavor, "summary judgment may be entered when no genuine issue of material fact exists." *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 629–30 (9th Cir. 2005) citing *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901–02 (9th Cir. 2002).

The crux of ITX's argument turns on whether AirWair's trade dress is valid. Registration on the principal register is "prima facie evidence of the validity of the registered mark" and entitles the plaintiff to a "strong presumption" that the mark is a protectable mark. 15 U.S.C. §§ 1115(a), 1057(b). To the extent a mark has become incontestable under § 1065, the registration is conclusive evidence of the validity of the registered mark. 15 U.S.C. § 1115(b).

ITX opines at length on the history of military style footwear in a bid to illustrate that the

13

'689 and '692 registrations are merely generic combat boots. ITX argues that each individual element of the '689 and '692 registrations is generic, vague, and overbroad. *See generally* Dkt. No. 80. ITX's argument hinges on a piecemeal dissection of the trade dress. *Id.* However, this argument is not allowable in the Ninth Circuit. "The theory that one can sever the different elements of a design and analyze them separately to determine whether the mark as a whole is protectable is contrary to the law of the Ninth Circuit." *Monster, Inc. v. Dolby Laboratories Licensing Corp.*, 920 F. Supp. 2d 1066, 1079 (N.D. Cal. 2013). It is not simply the individual elements of the mark that must be considered, but rather the mark in its entirety. *GoTo.com, Inc., v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000). "Under the anti-dissection rule, the validity and distinctiveness of a composite trademark is determined viewing the trademark as a whole, as it appears in the marketplace." *Official Airline Guides, Inc. v. Gross*, 6 F.3d 1385, 1392 (9th Cir. 1993). "Trade dress is the composite tapestry of visual effects." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001). "Courts have repeatedly cautioned that, in trademark – and especially trade dress – cases, the mark must be examined as a whole, not by its individual constituent parts." *Id.* "Simply dissecting [the] trademark into its design features and attributing to each a proven or commonly known utility is not, without more, conclusive that the design, considered as a whole, is de jure functional and not registerable." *In re Teledyne Industries, Inc.*, 696 F.2d 968, 971 (Fed. Cir. 1982).

Here, ITX merely deconstructs the various features of the '692 and '689 registrations and argues that each is generic and overbroad. Dkt. No. 80 at 16-19. Whether each element on its own is distinctive is irrelevant to the analysis; it is the mark *as a whole* which must be analyzed. ITX fails to proffer evidence that the '689 and '692 registrations as a whole are generic, vague, and overbroad. Accordingly, the Court finds the piecemeal analysis inadequate.

ITX also asserts the '689 and '692 registrations are functional. Dkt. No. 80 at 20. "In general terms, a product feature is functional, and cannot serve as a trademark if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, (2001) (internal citations omitted). "[A] functional feature is one the exclusive use of which would put competitors at a significant non-reputation-related disadvantage."

*Id.* (internal quotations omitted). The Ninth Circuit has articulated a four factor test for functionality: "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998). "No one factor is dispositive; all should be weighed collectively." *Id.* In evaluating functionality, it is crucial to focus not on the individual elements, but rather "on the overall visual impression that the combination and arrangement of those elements create." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001). ITX again relies upon a piecemeal dissection of the elements that constitute the '689 and '692 registrations in its argument that the trade dress is functional. Dkt. No. 80 at 20-25. ITX focuses on the functionality of the welt stitching and sole edge but fails to demonstrate how the trade dress *as a whole* is functional.

"[A] product's overall appearance is necessarily functional if *everything* about it is functional, not merely if *anything* about it is functional." *Blumenthal Distributing, Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 867 (9th Cir. 2020) (italics in original). In *Blumenthal*, the Court found that every chair's appearance is affected by having a backrest, which serves the utilitarian function of providing back support. *Id.* However, the Court stated that that does not mean that every chair's overall appearance is functional as a matter of law. *Id.* Similarly, every shoe's appearance is affected by having features such as a sole and heel tab which serve the utilitarian function of protecting one's foot from both the ground and enabling ease of use, respectively. However, that does not mean that every shoe's overall appearance is functional as a matter of law. These features have functional aspects because a shoe itself, and the elements which constitute a shoe, are *de facto* functional. *De facto* functionality means that the design of a product has a function. *Valu Engineering, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1274 (Fed. Cir. 2002). However, *de facto* functionality does not necessarily defeat registrability. *Id.* Accordingly, in the present matter, the asserted functionality of some of the elements which constitute AirWair's Trade Dress does not necessarily render the overall appearance of the footwear functional.

Finally, ITX argues the '689 and '692 registrations have not acquired secondary meaning.

15

Dkt. No. 80 at 25. Because product-design trade dress can never be inherently distinctive, a product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning. *Wal-Mart Stores, Inc., v. Samara Bros., Inc.*, 529 U.S. 205 (2000). "A product's trade dress attains secondary meaning when the purchasing public associates the dress with a single producer or source rather than just the product itself." *First Brands Corp. v. Fred Meyer, Inc*., 809 F.2d 1378, 1383 (9th Cir. 1987). "If the plaintiff establishes that a mark has been properly registered, the burden shifts to the defendant to show by a preponderance of the evidence that the mark is not protectable." *Zobmondo Entertainment, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1114 (9th Cir. 2010) (internal citations omitted).

AirWair has established that the AirWair Trade Dress has been properly registered. Dkt. No. 22, Ex. 1-5 (FAC). Further, AirWair has established prima facie evidence of secondary meaning through the registrations alone. AirWair claimed acquired distinctiveness under Section 2(f) of the Lanham Act in the applications for both the '689 and '692 registrations. *Id.* "[T]he presumption of validity that attaches to a Section 2(f) registration includes a presumption that the registered mark has acquired distinctiveness." *Cold War Museum, Inc. v. Cold War Air Museum, Inc.*, 86 F.3d 1352, 1356 (Fed. Cir. 2009). To rebut this presumption, a party seeking to invalidate a Section 2(f) registration must produce sufficient evidence for the trier of fact to conclude that the party has rebutted the mark's presumption of acquired distinctiveness by a preponderance of the evidence. *Id*. ITX clearly bears the burden to produce evidence that the AirWair Trade Dress lacks secondary meaning, but ITX has not met this burden. Instead ITX insists that "Plaintiffs have no evidence of secondary meaning." Dkt. No. 80 at 25. The absence of evidence is not evidence of absence. ITX does not provide concrete evidence that the '689 and '692 registrations do not have secondary meaning.

Accordingly, the Court DENIES ITX's motion for summary judgment.

### B. Plaintiff AirWair's Motion for Summary Judgment (Dkt. No. 74)

AirWair moves for partial summary judgment on the ground that no triable issue of material fact exists with respect to two of ITX's counterclaims and three of ITX's affirmative defenses. *See*

*generally* Dkt. No. 74 (Mot. for Summary Judgment). Specifically, AirWair moves on the first counterclaim (declaration of invalidity), the third counterclaim (cancellation of marks), the fifth affirmative defense (invalidity), the third affirmative defense (equitable defenses), and the fourth affirmative defense (fair use). *Id.*

ITX argues AirWair is not entitled to summary judgment because (1) ITX has rebutted any presumption of validity for AirWair's '689 and '692 registrations, (2) AirWair's arguments regarding its yellow welt stitching are irrelevant, (3) AirWair's trade dress is functional, (4) AirWair's trade dress is generic, and (5) AirWair's trade dress lacks secondary meaning. Dkt. No. 91 at 1 (Opp'n).

### 1.  **Invalidity Claims**

The Court will first address the claims that AirWair refers to as the "invalidity claims" – the first counterclaim (declaration of invalidity), the third counterclaim (cancellation of marks), the fifth affirmative defense (invalidity). AirWair's motion for summary judgment on these claims will be denied because there are multiple contested issues of material fact.

These claims all rest upon the argument that AirWair's trade dress is invalid because the trade dress is functional and generic. Validity is a threshold issue. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3 596, 604 (2005). "The plaintiff in an infringement action with a registered trademark is given the prima facie or presumptive advantage on the issue of validity, thus shifting the burden of production to the defendant to prove otherwise." *Id.* (internal citations omitted).

ITX has presented some evidence to undermine the presumption that AirWair's Trade Dress is valid, in an effort to demonstrate that "AirWair's alleged trade dress is generic, functional, and lacks secondary meaning." Dkt. No. 91 at 12. In particular, ITX's expert Caroline de Baere opines that AirWair's trade dress is functional, which, if accepted by the trier of fact, would preclude validity.

Whether a mark is generic is a question of fact. *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 840 (9th Cir. 2001). Functionality is also a question of fact.

17

*Valu Engineering, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1273 (Fed. Cir. 2002). However, 15 U.S.C. § 1119 provides that "in any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." "[D]istrict courts can cancel registrations during infringement litigation, just as they can adjudicate infringement in suits seeking judicial review or registration decisions." *B & B Hardware, Inc., v. Hargis Industries, Inc.*, 575 U.S. 138, 155 (2015). "[A]ny ground that would have prevented registration in the first place qualifies as a valid ground for cancellation." *Pinkette Clothing, Inc. v. Cosmetic Warriors Limited*, 894 F.3d 1015, 1021 (9th Cir. 2018) (internal quotations omitted); see 15 U.S.C. § 1064(1). "Federal courts may cancel registrations based on the same grounds that would be applied by the U.S. Patent and Trademark Office." *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 897 F. Supp. 2d 856, 870 (N.D. Cal. 2012).

ITX seeks cancellation, arguing the '689 and '692 registrations are generic and functional. *See generally* Dkt. No. 80. However, genuine issues of fact remain regarding the genericness and functionality of the '689 and '692 registrations. Accordingly, this Court must deny AirWair's motion for summary judgment on ITX's first counterclaim (declaration of invalidity), third counterclaim (cancellation of marks) and fifth affirmative defense (invalidity).

### 2. Affirmative Defenses

AirWair moved for summary judgment on ITX's third and fourth affirmative defenses Subsequently ITX dismissed portions of the third affirmative defense (estoppel, laches and statute of limitations), rendering the motion moot as to them.. As to the fourth affirmative defense, fair use, ITX did not address the question in its opposing papers and AirWair's motion on that defense will be granted.

ITX apparently still pursues its unclean hands equitable defenses, arguing that "ITX has adduced evidence that AirWair committed fraud in obtaining its registrations for the alleged trade dress." Dkt. No. 91 at 23 (Opp'n). However, these claims are unsupported as a matter of fact and the motion will be granted.

Fraud in the procurement of a trademark registration may be raised as an affirmative defense to a charge of infringement of a registered mark. 15 U.S.C. § 1115 (b)(1). The Ninth Circuit requires clear and convincing evidence for the elements of fraud on the United States Patent and Trademark Office. *OTR Wheel Engineering, Inc. v. West Worldwide Services, Inc.*, 897 F.3d 1008, 1020 (9th Cir. 2018). There is no room for speculation, inference or surmise. *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009).

ITX suggests that refusals of prior trade dress applications indicate AirWair "deceptively mislead the USPTO into registering" the '689 and '692 marks. Dkt. No. 80 at 15. The evidence ITX presents to substantiate this claim of fraud consists of two trademark application refusals from 1994 and one trademark application refusal from 2007. Dkt. No. 80 at 10-13 (Mot. for Summary Judgment). A trademark examiner's determination of *different* marks' ability to function as a trademark from twenty-seven and fourteen years ago is irrelevant and unpersuasive. Secondary meaning determinations made by a trademark examiner twenty-seven years prior, are not determinative of the *current* secondary meaning acquired by AirWair's Trade Dress. An examiner clearly determined that the '692 and '689 marks had enough secondary meaning to afford them registration in 2016. Marks registered on the Principal Register shall be prima facie evidence of the validity of the registered mark. 15 U.S.C. § 1115 (a). Further, "the presumption of validity that attaches to a Section 2(f) registration includes a presumption that the registered mark has acquired distinctiveness." *Cold War Museum, Inc. v. Cold War Air Museum, Inc.*, 586 F.3d 1352, 1356 (Fed. Cir. 2009). Accordingly, the Court finds that there is no genuine issue of material fact regarding ITX's unclean hands affirmative defense.

The Court finds there are genuine issues of material fact in this suit regarding the first counterclaim (declaration of invalidity), the third counterclaim (cancellation of marks), and the fifth affirmative defense (invalidity). The Court finds that there is no genuine issue of material fact regarding ITX's equitable affirmative defenses or fair use. Accordingly, AirWair's partial motion for summary judgment is GRANTED in part and DENIED in part.

## CONCLUSION[2]

For the foregoing reasons and for good cause shown, the Court hereby **DENIES** the motions to exclude Bertrand Guillaume, Robert L. Klein, and Susan Schwartz McDonald, **GRANTS** the motion to exclude David Franklyn, **DENIES IN PART** and **GRANTS IN PART** the motion to exclude Caroline de Baëre, **DENIES** ITX's motion for summary judgment, **DENIES IN PART** and **GRANTS IN PART** AirWair's motion for summary judgment, and **GRANTS** the motion to file under seal.

**IT IS SO ORDERED**.

Dated: July 12, 2021

SUSAN ILLSTON
United States District Judge

---

[2] Airwair's motion to seal is GRANTED. Dkt. No. 72