**BRYAN CAVE LEIGHTON PAISNER LLP**
Marcy J. Bergman, Cal. Bar No. 75826
K. Lee Marshall, Cal. Bar No. 277092
Alexandra C. Whitworth, Cal. Bar No. 303046
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4070
Telephone:   +1 415 675 3400
Facsimile:   +1 415 675 3434
E-Mail:   marcy.bergman@bclplaw.com
            klmarshall@bclplaw.com
            alex.whitworth@bclplaw.com

Attorneys for Plaintiff
AIRWAIR INTERNATIONAL, LTD.

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| AIRWAIR INTERNATIONAL LTD., a company of the United Kingdom,<br><br>Plaintiff,<br><br>v.<br><br>ITX USA INC., and DOES 1-50,<br><br>Defendant. | Case No. 3:19-cv-07641-SI<br><br>Honorable Susan Illston<br><br>**AIRWAIR INTERNATIONAL LTD.'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON DEFENDANT'S COUNTERCLAIMS AND AFFIRMATIVE DEFENSES**<br><br>Trial Date: August 2, 2021<br>Date Action Filed: Nov. 20, 2019<br>Amended Complaint Filed: Mar. 21, 2020 |

Pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, Plaintiff AirWair International Ltd. ("AirWair") hereby moves for judgment as a matter of law on Defendant ITX USA LLC's ("ITX") counterclaims for cancellation and affirmative defenses: lack of secondary meaning ("Lack of Secondary Meaning Claims"), genericness ("Genericness Claims"), and functionality ("Functionality Claims").

## I. STANDARD OF REVIEW

"If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a). This rule permits the trial court to remove issues from the jury's consideration "when the facts are sufficiently clear that the law requires a particular result." *Weisgram v. Marley Co.*, 528 U.S. 440, 448 (2000). In making this determination, the court should consider all of the evidence in the record, not merely the evidence favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The standard for granting judgment as a matter of law "mirrors" that of summary judgment, such that the inquiry under each is the same. *Id.*

## II. ARGUMENT

AirWair alleges and has introduced evidence that ITX has infringed, *inter alia*, AirWair's trade dress registered as U.S. Reg. No. 5,067,689 (the "'689 Mark"), U.S. Reg. No. 5,067,692 (the "'692 Mark"), and U.S. Reg. No. 2,437,751 (the "'751 Mark"). In response, ITX has asserted counterclaims and affirmative defenses on the grounds of (1) lack of secondary meaning; (2) genericness; and (3) functionality. ITX bears the burden of proof on its counterclaims and affirmative defenses attacking AirWair's registered trade dress marks. *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1022 (9th Cir. 2018) ("At trial, a registered mark is presumptively valid and therefore distinctive . . .

and the burden is on the defendant to prove otherwise."). However, ITX has presented no evidence to support its Lack of Secondary Meaning Claims, Genericness Claims, or Functionality Claims, and the Court should accordingly decide those issues as a matter of law. ITX cannot and has not rebutted the "strong presumption" of validity that AirWair's trade dress registrations hold.

### A. The Registered Trade Dress Is Presumed Valid; It is ITX's Burden to Prove Otherwise.

An incontestable trademark registration constitutes "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b). Although certain statutory defenses still apply to incontestable marks, a mark that has obtained incontestability status cannot be challenged for lack of secondary meaning. *See generally Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189 (1985).

Registration of a trademark on the principal register is, by itself, prima facie evidence of the validity of the registered mark. 15 U.S.C. § 1115(a); *adidas Am., Inc. v. Skechers USA, Inc.*, 149 F. Supp. 3d 1222, 1234 (D. Or. 2016) ("Skechers I"), *aff'd in part, rev'd in part*, 890 F.3d 747 (9th Cir. 2018) ("A mark registered under Section 2 of the Lanham Act is presumed valid . . . ."). Accordingly, the party challenging validity bears a heavy burden of proving a valid defense. *See OTR Wheel Eng'g, Inc.*, 897 F.3d at 1022; *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1115 (9th Cir. 2010). The "strong presumption" of validity includes the specific presumptions that the trademark is not generic and has acquired secondary meaning. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 604, 606 (9th Cir. 2005).

It is undisputed that AirWair's '689 Mark, '692 Mark, and '751 Mark are registered on the principal register. *See* Trial Exhibits 146, 147 and 149. Thus, they are presumed valid and ITX bears the heavy burden of rebutting that presumption.

**B.    ITX Has Introduced No Evidence That The '689 Mark, The '692 Mark, and the '751 Mark Lack Secondary Meaning.**

Trade dress has acquired secondary meaning, and thus distinctiveness, when consumers associate the design features with a particular producer. *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 754 (9th Cir. 2018) ("Skechers III"); *see also Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1262 (9th Cir. 2001); *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 802 (9th Cir. 1970). Secondary meaning can be demonstrated in many ways, including direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant. *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999); *see also Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1015 (9th Cir. 1985); *adidas-Salomon AG v. Target Corp.,* 228 F. Supp. 2d 1192, 1207 (D. Or. 2002).

ITX has introduced *no* evidence at trial to support its Lack of Secondary Meaning Claims. Particularly through its witnesses, Leslie Lane and Damien Wilson, AirWair has introduced evidence of its strong market position, substantial sales and advertising under the trade dress, and exclusivity, manner and length of use of the registered trade dress. On the other hand, ITX has introduced no evidence rebutting that evidence or otherwise showing that consumers do not associate the '689 Mark and the '692 Mark with AirWair. ITX has introduced *no* direct consumer testimony, no expert testimony on the subject, no corporate representative testimony, and no survey evidence that would rebut the presumption of validity to which AirWair's registrations are entitled.

**C.    ITX Has Introduced No Evidence That The '689 Mark, '692, or the '751 Mark are Generic.**

As with the lack of secondary meaning, the burden of proving genericness lies with the party challenging a registered mark; if that party fails to adduce sufficient evidence of genericness to rebut the "strong presumption of validity," judgment as a matter of law is

appropriate. *See, e.g.*, *KP Permanent Make-Up*, 408 F.3d at 596 (presumption of validity resulting from federal registration includes the specific presumption that the trademark is not generic). Genericness has generally been considered in the context of unregistered trade dress under facts dissimilar to those here, as registered trade dress has already had the benefit of Trademark Office approval of its definition and scope. *See, e.g., Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1174 (N.D. Cal. 2007).

One example of a case that considered genericness in the context of registered trade dress is *Grupo Bimbo*, in which the court rejected a genericness challenge to a mark that consisted of a taco chip in the shape of a rolled up taco shell. *See* 2013 WL 12133892, at *10-11. There, the defendant failed to meet its burden of establishing that the product shape was "a common shape" in the industry or "such a basic or necessary format that no one should have a trade dress 'monopoly' on it." *Id.* at *11.

Moreover, in assessing genericness, the trade dress must be considered as a whole; the defendant cannot meet its burden of proving genericness by separating out the elements of the trade dress and examining each element separately. *Morton & Bassett, LLC v. Organic Spices, Inc.*, No. 15-cv-01849-HSG, 2017 WL 1425908, at *8 (N.D. Cal. Apr. 21, 2017) (noting that the fact all elements of a product are indisputably generic individually is "irrelevant insofar as it analyzes the elements individually and merely conclusory with relation to the total visual impression created by their combination and arrangement").

ITX has likewise failed to introduce evidence at trial to support its Genericness Claims. For a reasonable jury to find that that the '689 Mark is generic, ITX must have presented evidence that a two-tone grooved sole edge is a common, basic, or necessary shape for footwear. *See* Trial Exhibit 146. For a reasonable jury to find that that the '692 Mark is generic, ITX must have presented evidence that a two-tone grooved sole edge, combined with welt stitching, combined with a heel tab, is a common, basic, or necessary shape for footwear. *See* Trial Exhibit 147. For a reasonable jury to find that that the '751 Mark is generic, ITX must have presented evidence that a two-tone grooved sole edge,

combined with yellow welt stitching is a common, basic, or necessary shape for footwear. *See* Trial Exhibit 149.

ITX is not permitted to point to evidence that any *one* of a two-tone sole edge, or a grooved sole edge, or welt stitching, or a heel tab, or yellow welt stitching—if any such evidence were admitted in evidence, which AirWair does not concede—to support a claim that any one of the '689 Mark, '692 Mark, or '751 Mark is generic as a whole. *Clicks Billiards, Inc.*, 251 F.3d at 1259 ("Courts have repeatedly cautioned that, in trademark – and especially trade dress – cases, the mark must be examined as a whole, not by its individual constituent parts."). Whether other boots on the market may use *some* element of the trade dress, like welt stitching or a heel tab, is irrelevant. *See Morton & Bassett*, 2017 WL 1425908, at *8. ITX has not presented any evidence to meet its "heavy burden" of showing that the registered trade dress as a whole is generic. Thus, ITX's Genericness Claims fail as a matter of law.

### D. ITX Has Introduced No Evidence That The '689 Mark, The '692 Mark, or the '751 Mark are Functional.

Here, ITX again bears the burden of proving functionality. *See Vuitton et Fils S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769 (9th Cir. 1981) (if plaintiff has a federal registration, burden of proof on functionality shifts to defendant). *Qualitex v. Jacobson Products Co., Inc.*, 13 F.3d 1297, 1301 (9th Cir, 1994) ("[a] certificate of registration ... relieves that holder, Qualitex, of the burden of proving nonfunctionality"), rev'd on other grounds (1995). *Playboy Enterprises Inc. v. Chen*, No. CV 96-3417 DDP VAPX, 1997 WL 829339, at *7 (C.D. Cal. Oct. 1, 1997) (granting motion for summary judgment when defendant could not rebut the presumption of nonfunctionality and offered no evidence to do so).

In assessing functionality, the trade dress's overall combination of elements must be considered as a whole; the fact that separate, individual elements of the trade dress may be functional does not render the trade dress functional. *See, e.g., Clicks Billiards, Inc.*, 251 F.3d at 1259 ("[I]n evaluating functionality …, it is crucial that we focus not on the

individual elements, but rather on the overall visual impression that the combination and arrangement of those elements create…"); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842 (9th Cir. 1987) ("[F]unctional elements that are separately unprotectable can be protected together as part of trade dress."). The Ninth Circuit has set forth four non-dispositive factors to consider in determining functionality:

(1)   Whether *the design* yields a utilitarian advantage;

(2)   Whether alternative designs are available;

(3)   Whether advertising touts the utilitarian advantages *of the design*; and

(4)   Whether the *particular design* results from a comparatively simple or inexpensive method of manufacture.

*Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998) (hereinafter the "*Disc Golf* factors"). ITX's *only* evidence of functionality comes from its footwear expert, Ms. Caroline de Baere. Ms. de Baere's opinions do not constitute evidence sufficient to meet ITX's burden of proof. Ms. de Baere creates a strawman by arguing that welt stitching and a heel tab can provide utility, but AirWair does not claim rights in those elements alone. Rather, the trade dress consists of *a combination* of elements, including not only welt stitching and a heel tab, but also the two-tone grooved sole edge.

Ms. de Baere offered *no* opinion regarding *any utilitarian* function for the design of a sole edge including longitudinal ribbing and a dark colored band over a lighter color, which are key components of the marks. Instead, she opined that the grooved sole edge is functional simply because it is "overbroad" and a "common" design (which is not part of the functionality test at all), and that a dark color band over a lighter color is functional because there are not sufficient alternative designs available to those in the footwear industry. ITX has thus presented no evidence of the functionality of the longitudinal ribbing (or "grooves") or the dark color band over light ("two-tone"). Every time she was asked about her basis for believing the two-tone grooved sole edge is functional, Ms. de Baere simply repeated that there are a lack of alternative designs; she never offered an opinion as to any utilitarian function for this design feature. Indeed, Ms. de Baere admitted that the

two-tone grooved sole edge element does not necessarily make a footwear product any more durable or comfortable. AirWair, on the other hand, has offered evidence through Damien Wilson and the declaration of Maximillian Griggs that "no manufacturing or functional advantage is derived from the horizontal grooved sole edge." *See* Trial Exhibit 325 at para. 14.

Additionally, Ms. de Baere claims that the *separate* elements of longitudinal ribbing (i.e., grooves) and a dark color band over a light color (i.e., two-tone) are functional because of a lack of alternative designs. Yet her testimony vividly demonstrated the opposite. Ms. de Baere identified numerous alternative designs that differ from the two-tone grooved sole edge. With respect to the functionality analysis and the availability of alternative designs, the focus is less on **how many** alternative designs are available, but instead, "to consider the **existence or nonexistence** of alternative designs as probative evidence of functionality or nonfunctionality." *Moldex-Metric, Inc. v. McKeon Products, Inc.*, 891 F.3d 878, 886 (9th Cir. 2018). For purposes of the alternative design analysis, it is merely relevant whether or not other designs exist. Ms. de Baere has agreed that there are numerous alternative designs.

ITX can also point to no AirWair advertisement touting utilitarian advantages of the two-tone grooved sole edge. For purposes of this factor, it is important to note the distinction between functionality of the product (de facto functionality) and functionality of the product's configuration (de jure functionality). The only advertisements relied upon by ITX point to the utilitarian nature of Dr. Martens boots in a general sense, but not any utilitarian aspect of the *design* of the footwear or the *trade dress*. The fact that the boots are functional does not mean that the design elements of the boots are functional. This distinction is crucial, and fatal to any argument ITX may make as to this factor. Advertisements that do not attribute utilitarian advantages *to the trade dress design as a whole* are irrelevant. *See adidas Am., Inc. v. Skechers USA, Inc.*, No. 3:15-CV-01741-HZ, 2017 WL 3319190, at *15 (D. Or. Aug. 3, 2017). Because ITX offers no advertisements in support of this factor, there can be no disputed facts, and ITX cannot support any claim of functionality based on this factor.

Finally, Ms. de Baere admits that a two-tone grooved sole edge is *not* necessarily less expensive to manufacture than other side-sole designs because it depends on the shoe and the method of construction. Thus, ITX has no evidence to support a finding of functionality based on this factor.

In sum, ITX has not produced sufficient evidence to support the four factors used by the Ninth Circuit to measure functionality, and therefore, it has no basis for its cancellation or invalidity claims as to the '689 Mark, '692 Mark, or '751 Mark based on functionality. As discussed above, it is *the combination* of trade dress features that must be evaluated. Because a core component of the marks (and the only component of its '689 Mark) is the two-tone grooved sole edge, and Ms. de Baere did not so much as attempt to provide a utilitarian explanation for that element, ITX has no evidence on this factor. With respect to the two-tone, grooved sole edge described in the '689, '692, and '751 Marks, ITX has failed to adduce evidence to show functionality. Therefore, no reasonable jury could find that a combination of elements as a whole—containing two nonfunctional features—is functional. Without any evidence that the *combination* of features specified in the marks, including the two-tone grooved sole edge, is functional, ITX cannot sustain its burden.

### III.  CONCLUSION

AirWair respectfully moves the Court for judgment as a matter of law under Rule 50(a) of the Federal Rules of Civil Procedure on Defendant ITX's Lack of Secondary Meaning Claims, Genericness Claims, and Functionality Claims as a reasonable jury could not find in favor of ITX on those issues. ITX cannot and has not rebutted the "strong presumption" of validity that AirWair's trade dress registrations hold. This Court previously strongly considered granting a Motion for Summary Judgment on similar issues. The standard for this Motion mirrors that of summary judgment. After having heard the evidence, because ITX's case is deficient as a matter of law, the Court should not present those issues to the jury and should enter judgment as a matter of law in favor of AirWair on ITX's Lack of Secondary Meaning Claims, Genericness Claims, and Functionality Claims.

Dated: August 5, 2021

Respectfully submitted,

By: *Alexandra C. Whitworth*
Alexandra C. Whitworth
BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys for Plaintiff
AIRWAIR INTERNATIONAL LTD.

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

9
AIRWAIR INTERNATIONAL LTD.'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON DEFENDANT'S COUNTERCLAIMS AND AFFIRMATIVE DEFENSES