UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIRWAIR INTERNATIONAL LTD., <br><br>　　　　　Plaintiff, <br><br>　　v. <br><br>ITX USA LLC, <br><br>　　　　　Defendant. | Case No. 19-cv-07641-SI <br><br>**JURY INSTRUCTIONS** |

# DUTY OF JURY

Members of the jury: Now that you have heard all the evidence, it is my duty to instruct you on the law that applies to this case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

## CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties.

This is a trade dress infringement case. Trade dress refers to elements of a product's design that are used to indicate the source of the product and distinguishes it from the products of others. The plaintiff, AirWair, is the company that makes and sells Dr. Martens footwear. AirWair claims that Dr. Martens footwear contains certain design elements that function as trade dress. AirWair has three registrations for trade dress with the U.S. Patent and Trademark Office. Those registrations are for the following design elements:

1. The combination of yellow stitching in the welt area and a two-tone grooved sole edge (the '751 Mark);

2. Longitudinal ribbing and a dark color band over a light color band on the outer sole edge, combined with welt stitching and a tab located at the back heel of footwear (the '692 Mark);

3. A sole edge including longitudinal ribbing, and a dark color band over a light color band (the '689 Mark).

In my instructions to you, I will refer to these trade dress designs as the "Registered Trade Dress."

In addition, AirWair claims that its "Jadon"-style boot has certain additional trade dress. Specifically, AirWair claims that the "Jadon" boot uses a combination of the Registered Trade Dress and additional design elements, including a grooved sole edge, an angled heel, a cleat pattern, and a double-layered platform sole. In my instructions to you, I will refer to the combination of these design elements as the "Jadon" Design.

Plaintiff AirWair asserts that defendant ITX (a) infringed its Registered Trade Dress, (b) unlawfully copied both its Registered Trade Dress and the Jadon Design to create a false and misleading designation of origin in a way likely to cause confusion, (c) engaged in unfair competition by imitating AirWair's trade dress, and (d) diluted AirWair's famous trade dress under both federal and state law.

ITX denies AirWair's claims. ITX asserts as affirmative defenses that (a) it did not infringe, directly or indirectly, AirWair's alleged trade dress designs and that there is no likelihood of confusion between the products, (b) AirWair does not own protectable rights because its alleged trade dress designs are invalid as functional or generic, (c) ITX acted in good faith and did not intend to infringe AirWair's alleged designs, and (d) AirWair sustained no injury or damage, or if it did, AirWair failed to mitigate such injury or damages.

ITX has also filed a counterclaim against the '689 Mark and the '692 Mark on grounds that the alleged designs are generic and functional. AirWair denies ITX's affirmative defenses and counterclaims.

### **BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

### **TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS**

You should decide the case as to each party separately. Unless otherwise stated, the instructions apply to all parties.

### **CORPORATIONS—FAIR TREATMENT**

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any part.

### **WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits that are admitted into evidence;

3. any facts to which the lawyers have agreed; and

4. any facts that I may instruct you to accept as proved.

## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3. Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4. Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

## EVIDENCE FOR LIMITED PURPOSE

Some evidence was admitted only for a limited purpose.
When I instructed you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

## **RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

## **CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1. the opportunity and ability of the witness to see or hear or know the things testified to;

2. the witness's memory;

3. the witness's manner while testifying;

4. the witness's interest in the outcome of the case, if any;

5. the witness's bias or prejudice, if any;

6. whether other evidence contradicted the witness's testimony;

7. the reasonableness of the witness's testimony in light of all the evidence; and

8. any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

## **EXPERT OPINIONS**

You heard Robert Klein, Caroline de Baëre, and Susan McDonald give testimony of opinions and the reasons for his or her opinions. This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

## CHARTS AND SUMMARIES RECEIVED IN EVIDENCE

Certain charts and summaries may be admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

## STIPULATIONS OF FACT

The parties have agreed to the following facts:

1. The Registered Marks are owned by AirWair.
2. The '751 Mark is incontestable and includes the element of yellow welt stitching.
3. The ITX products do not use yellow stitching.
4. ITX does not dispute that AirWair has pursued actions against third-parties involving the pleaded Registered Marks.
5. ITX does not dispute that AirWair has advertised the Dr. Martens brand.
6. ITX is the entity responsible for selling Pull & Bear branded products in the United States.
7. ITX offered for sale and sold the ITX Footwear to consumers in the United States via the retail website www.pullandbear.com/us
8. The '751 Mark, the '689 Mark, and the '692 Mark are registered with the U.S. Patent and Trademark Office.
9. ITX sold the following units, between the following dates, resulting in the following sales numbers:

| Style Name | Net Units | Net Sales ($) | First Sale Date | Last Date of Sale |
|---|---|---|---|---|
| Derby Shoes with Topstitching | 4 | 200 | 3/11/2019 | 7/1/2019 |
| White Platform Boots | 23 | 1592 | 2/27/2019 | 4/5/2019 |
| Black Platform Derby Shoes | 6 | 395 | 8/20/2019 | 10/19/2019 |
| Faux Suede Lace Front Chunky Sole Boots | 14 | 692 | 3/11/2019 | 6/7/2019 |

You must treat these facts as having been proved.

# FIRST CLAIM: TRADE DRESS INFRINGEMENT OF A REGISTERED MARK IN VIOLATION OF 15 U.S.C. § 1114(1))

Plaintiff's first claim is for trade dress infringement of a Registered Mark, in violation of 15 U.S.C. §1114(1).  As to this claim, the plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1. The Registered Mark is valid and protectable;

2. The plaintiff owns the Registered Mark;

3. The defendant used trade dress similar to the plaintiff's Registered Mark without the consent of the plaintiff in a manner that is likely to cause confusion among ordinary consumers or other members of the public as to the source, sponsorship, affiliation, or approval of the goods.

For purposes of this Instruction, a "Registered Mark" refers to any of the following:

- The '751 Mark: The combination of yellow stitching in the welt area and a two-tone grooved sole edge;

- The '692 Mark: Longitudinal ribbing and a dark color band over a light color band on the outer sole edge, combined with welt stitching and a tab located at the back heel of footwear; or

- The '689 Mark: A sole edge including longitudinal ribbing, and a dark color band over a light color band.

If you find that trade dress infringement has been proved for any Registered Mark, your verdict should be for the plaintiff on its claim for federal trademark infringement of that mark. If, on the other hand, the plaintiff has failed to prove any of these elements, your verdict should be for the defendant on this claim.

Plaintiff only has the burden to show its Registered Marks are valid if Defendant has introduced sufficient evidence such that you could find that the Registered Marks are invalid, as described in the following instructions.

## **SECOND AND THIRD CLAIMS:  FEDERAL AND STATE UNFAIR COMPETITION (UNREGISTERED TRADE DRESS INFRINGEMENT)**

Under certain circumstances, unregistered trade dress can be valid and provide the trade dress owner with the exclusive right to use the trade dress. Plaintiff's second claim is for federal unfair competition under 15 U.S.C. §1125, related to the trade dress infringement of the Jadon Design. Plaintiff's third claim is for state common law unfair competition related to the trade dress infringement of the Jadon Design. The requirements for these claims are the same.

For each of these claims, the plaintiff has the burden of proving by a preponderance of the evidence each of the following elements:

1. The overall visual impression of the Jadon boot, including welt stitching, a grooved sole edge, angled heel, cleat pattern, and platform sole, is distinctive;

2. The plaintiff owns the overall visual impression of the Jadon boot as trade dress;

3. The overall visual impression of the Jadon boot is nonfunctional; and

4. The defendant used trade dress similar to the overall visual impression of the Jadon boot without the consent of the plaintiff in a manner that is likely to cause confusion among ordinary consumers and the general public as to the source, sponsorship, affiliation, or approval of the defendant's goods.

If you find that each of the elements on which the plaintiff has the burden of proof has been proved, your verdict should be for the plaintiff on its claims for federal and common law unfair competition. If, on the other hand, the plaintiff has failed to prove any of these elements, your verdict should be for the defendant on these claims.

# FOURTH AND FIFTH CLAIMS: TRADEMARK DILUTION

AirWair's <u>fourth claim</u> is that defendant ITX diluted its Registered Marks and Jadon Design under federal law, 15 USC § 1125(c). AirWair's <u>fifth claim</u> is that defendant ITX diluted its Registered Marks and Jadon Design under California state law, Business and Professions Code § 14247. The requirements for these claims are the same.

For each of these claims, the plaintiff has the burden of proving by a preponderance of the evidence each of the following elements:

    (1) Its Registered Marks and /or Jadon Design are valid and famous; and

    (2) Defendant's conduct was likely to cause dilution by blurring of plaintiff's Registered Marks and/or Jadon Design.

<u>Famous marks</u>: A mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods of the mark's owner. You may consider the following relevant factors in determining if AirWair's registered marks and/or trade dress is famous:

    a. The duration, extent, and geographic reach of advertising and publicity of the trade dress;
    b. The amount, volume, and geographic extent of sales of goods offered under the trade dress;
    c. The extent of actual recognition of the trade dress; and
    d. Whether the trade dress was registered in the USPTO.

<u>Dilution by blurring</u>: Dilution by blurring is association arising from the similarity between a mark or trade dress and a famous mark or trade dress that impairs the distinctiveness of the famous mark or trade dress. In determining whether a mark or trade dress is likely to cause dilution by blurring, you may consider the following relevant factors:

    a. The degree of similarity between the trademark or trade dress and the famous trademark or trade dress;
    b. The degree of inherent or acquired distinctiveness of the famous trademark or trade dress;
    c. The extent to which the owner of the famous trademark or trade dress is engaging in substantially exclusive use of the mark;
    d. Whether the defendant intended to create an association with the famous trademark or trade dress;
    e. Any actual association between the defendant's design or trade dress and the famous trade dress.

With respect to AirWair's Registered Marks, if you find they are valid and famous, and ITX is likely to cause dilution by blurring, you must find for AirWair.

With respect to the Jadon Design, if you find that the trade dress is valid and famous, in order to find for AirWair you must also find that, if the Jadon Design includes any of plaintiff's Registered Marks, the Jadon Design, taken as a whole, is famous separate and apart from any fame of plaintiff's Registered Marks.

11

**THE FOLLOWING INSTRUCTIONS RELATE TO ALL PLAINTIFF'S CLAIMS, UNLESS SPECIFIED OTHERWISE.**

### **(ALL CLAIMS) DEFINITION—TRADE DRESS**

Trade dress is the non-functional physical detail and design of a product or its packaging, which indicates or identifies the product's source and distinguishes it from the products of others.

Trade dress is the product's total image and overall appearance, and may include features such as size, shape, color, color combinations, texture, or graphics. In other words, trade dress is the form in which a company presents a product to the market, its manner of display.

A person who uses the trade dress of another may be liable for damages.

Trade dress concerns the overall visual impression created in the consumer's mind when viewing the non-functional aspects of the product and not from the utilitarian or useful aspects of the product. In considering the impact of these non-functional aspects, which are often a complex combination of many features, you must consider the appearance of features together, rather than separately.

### **(ALL CLAIMS) TRADE DRESS LIABILITY—THEORIES AND POLICIES**

The trade dress laws balance three often-conflicting goals: (1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; (2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and (3) protecting the public interest in fair competition in the market.

The balance of these policy objectives vary from case to case, because they may often conflict. Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

In these instructions, I will identify types of facts you are to consider in deciding if the defendant is liable to the plaintiff for violating the trade dress law. These facts are relevant to whether the defendant is liable for unfairly competing, by using trade dress in a manner likely to cause confusion as to the origin or quality of plaintiff's goods.

## (RE: FIRST CLAIM)  PRESUMED VALIDITY AND OWNERSHIP REGISTERED TRADEMARK (15 U.S.C. §§ 1057, 1065 and 1115)

To establish trade dress infringement, the plaintiff is required to prove by a preponderance of the evidence that the trade dress described in the Registered Marks is valid and protectable and that the plaintiff owns the trade dress described in the Registered Mark. A valid trade dress is a symbol or design, or any combination of these items, that indicates the source of goods and distinguishes those goods from the goods of others. A trade dress becomes protectable after it is used in commerce.

One way for the plaintiff to prove trade dress validity is to show that the trade dress is registered. An owner of a trade dress may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity, protectability, and ownership of the trade dress.  The '751, '689 and '692 Marks have been registered with the United States Patent and Trademark Office. Exhibits 146, 147 and 149 are certificates of registration from the United States Patent and Trademark Office submitted by the plaintiff as proof of the validity of the Registered Marks.

Because there are certificates, these trademarks are presumed valid, but the presumption is rebuttable. The validity of the '751 mark is not contested, but defendant has submitted evidence to dispute the validity of the '689 Mark and the '692 Mark. The defendant alleges that the certificates for those marks cannot be considered proof of validity of the trademark because the defendant contends that those marks are functional and are generic.

Unless the defendant proves by a preponderance of the evidence that either or both the '689 and '692 Marks are functional or generic, you must consider the trademark to be conclusively proved as valid. However, if the defendant shows that either or both the '689 and '692 marks are functional or generic by a preponderance of the evidence, then the Registered Marks are no longer conclusively presumed to be valid. You should then consider whether all of the evidence admitted in this case, in addition to this certificate of registration, shows by a preponderance of the evidence that these marks are valid.

## (RE: CLAIMS TWO AND THREE) --  DISTINCTIVENESS/SECONDARY MEANING

To determine whether trade dress is valid and protectable, you must consider the recognition that the trade dress has among prospective consumers.  This market recognition is called the trade dress's "secondary meaning."

A product design acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is. You must find that the preponderance of the evidence shows that a significant number of the consuming public associates the Jadon Design with a single source, in order to find that it has acquired secondary meaning.

When you are determining whether the Jadon Design has acquired a secondary meaning, consider the following factors:

(1) Consumer Perception. Whether the people who purchase the product that bears the claimed trade dress associate the trade dress with the owner;

(2) Advertisement. To what degree and in what manner the owner may have advertised under the claimed trade dress;

(3) Demonstrated Utility. Whether the owner successfully used this trade dress to increase the sales of its product;

(4) Extent of Use. The length of time and manner in which the owner used the claimed trade dress;

(5) Exclusivity. Whether the owner's use of the claimed trade dress was exclusive;

(6) Copying. Whether the defendant intentionally copied the owner's trade dress; and

(7) Actual Confusion. Whether the defendant's use of the plaintiff's trade dress has led to actual confusion among a significant number of consumers.

The presence or absence of any particular factor should not necessarily resolve whether the Jadon Design has acquired secondary meaning.

Unregistered trade dress, like the Jadon Design, is protectable only to the extent you find it has acquired distinctiveness through secondary meaning by the public coming to associate the mark with a particular source. The plaintiff has the burden of proving that the Jadon Design has acquired a secondary meaning.

The mere fact that the plaintiff is using the Jadon Design, or that the plaintiff began using it before the defendant, does not mean that the trade dress has acquired secondary meaning. There is no particular length of time that a trade dress must be used before it acquires a secondary meaning.

## (ALL CLAIMS)  NON FUNCTIONALITY REQUIREMENT

For a product's design to be protected under the law, the design must be nonfunctional.

A product may be functional in either of two ways. They are referred to as "utilitarian functionality" and "aesthetic functionality."

A claimed trade dress has utilitarian functionality if it is essential to the use or purpose of a product or affects its cost or quality. To determine whether this definition is satisfied, you should consider the following factors:

(1) whether the design yields a utilitarian advantage in how well the product works;

(2) whether alternative designs are available;

(3) whether advertising touts the utilitarian advantages of the design; and

(4) whether the particular design results from a comparatively simple or inexpensive method of manufacture.

No one factor is dispositive; all should be weighed together.

A claimed trade dress has aesthetic functionality if it serves an aesthetic purpose wholly independent of any source identifying function, such that the trade dress's protection under trademark law would impose a significant non-reputation-related competitive disadvantage on its owner's competitors. The inquiry is whether, if one seller were given exclusive rights to use the claimed trade dress, other sellers would be forced to use alternative designs that make their products more costly to sell, or for which consumers' willingness to pay would be lower for reasons having nothing to do with the reputation of any source (e.g., the alternative designs would not have as much intrinsic aesthetic appeal).

With respect to the Jadon Design, the plaintiff has the burden of proving non-functionality by a preponderance of the evidence to show that the trade dress is valid and protected from infringement.

With respect to the Registered Marks, the Defendant has the initial burden of proving functionality by a preponderance of the evidence. Unless the defendant proves by a preponderance of the evidence that the Registered Marks are functional, you must consider the trademark to be conclusively proved as non-functional.

**(ALL CLAIMS)  LIKELIHOOD OF CONFUSION—FACTORS—SLEEKCRAFT TEST**

You must consider whether the defendant's use of the Registered Marks and/or the Jadon Design is likely to cause confusion about the source of the plaintiff's or the defendant's goods.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

15

(1) Strength or Weakness of the Plaintiff's trade dress. The more the consuming public recognizes the plaintiff's trade dress as an indication of origin of the plaintiff's goods, the more likely it is that consumers would be confused about the source of the defendant's goods if the defendant uses similar trade dress.

(2) Defendant's Use of the trade dress. If the defendant and plaintiff use their trade dress designs on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

(3) Similarity of Plaintiff's and Defendant's trade dress. If the overall impression created by the plaintiff's trade dress in the marketplace is similar to that created by the defendant's trade dress in appearance, there is a greater chance of likelihood of confusion. Similarities in appearance weigh more heavily than differences in finding the marks are similar.

(4) Actual Confusion. If use by the defendant of the plaintiff's trade dress has led to instances of actual confusion, this strongly suggests a likelihood of confusion. However actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, the defendant's use of the trade dress may still be likely to cause confusion. As you consider whether the trade dress used by the defendant creates for consumers a likelihood of confusion with the plaintiff's trade dress, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

(5) Defendant's Intent. Knowing use by defendant of the plaintiff's trade dress to identify similar goods may strongly show an intent to derive benefit from the reputation of the plaintiff's trade dress, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that the defendant acted knowingly, the use of plaintiff's trade dress to identify similar goods may indicate a likelihood of confusion.

(6) Consumer's Degree of Care. The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be. They may be less likely to be confused by similarities in the plaintiff's and defendant's trade dress.

## ITX COUNTERCLAIM:  CANCELLATION OF '689 REGISTRATION AND '692 REGISTRATION

ITX has filed a counterclaim of cancellation against AirWair.  To prevail on a counterclaim of cancellation, defendant must show, by a preponderance of the evidence, that the underlying trade dress is functional or generic. Trade dress is generic if the definition of the alleged trade dress is overbroad or too generalized; if the alleged trade dress is the basic form of a type of product; or if the alleged trade dress is so common in the industry that it cannot be said to identify a particular source. If you find that Defendant has established by a preponderance of the evidence that the '689 or '692 Mark is functional or is generic, you can find that the registrations should be cancelled.

## TRADE DRESS DAMAGES

If you find for the plaintiff on the plaintiff's infringement or unfair competition claim and find that the defendant had actual notice of the plaintiff's Registered Trade Dress, you must determine the plaintiff's actual damages.

The plaintiff has the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant's infringement of the plaintiff's registered trade dress.

You should consider the following:

   (1) The injury to the plaintiff's reputation;

   (2) The injury to plaintiff's goodwill, including injury to the plaintiff's general business reputation; and

   (3) The expense of preventing customers from being deceived.

When considering prospective costs (e.g., cost of future advertising, expense of preventing customers from being deceived), you must not overcompensate. Accordingly, your award of such future costs should not exceed the actual damage to the value of the plaintiff's trade dress at the time of the infringement by the defendant.

# DAMAGES—MITIGATION

Defendant has brought an affirmative defense of mitigation of damages. To mitigate means to avoid or reduce damages.

To establish its affirmative defense of mitigation of damages, defendant has the burden of proving by a preponderance of the evidence:

1. that the plaintiff failed to use reasonable efforts to mitigate damages; and

2. the amount by which damages would have been mitigated.

If you find that defendant has proven these elements, you must reduce plaintiff's damages accordingly.

## **DUTY TO DELIBERATE**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

## **CONSIDERATION OF EVIDENCE—CONDUCT OF THE JURY**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the

courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

### **NO TRANSCRIPT AVAILABLE TO JURY**

During deliberations you will not have a transcript of the trial testimony.

### **COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

### **RETURN OF VERDICT**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.