United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AIRWAIR INTERNATIONAL LTD.,

Plaintiff,

v.

ITX USA LLC,

Defendant.

Case No. 19-cv-07641-SI

**ORDER GRANTING PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION**

Dkt. No. 189

Before the Court is a motion for a permanent injunction filed by plaintiff AirWair International Ltd. ("plaintiff" or "AirWair") against defendant ITX USA, LLC ("ITX" or "defendant"). Dkt. No. 189 (Plaintiff's Motion). On November 12, 2021, the Court held a hearing and heard argument. Having considered the parties' papers and the arguments made during the hearing, the Court hereby GRANTS plaintiff's motion as discussed below.

## BACKGROUND

Plaintiff owns the following trade dress, referred to collectively as "Dr. Martens Trade Dress": Registration No. 2437751 is directed to "a combination of yellow stitching in the welt area, and a two-tone grooved sole edge"; Registration No. 5067689 is directed to "a sole edge including longitudinal ribbing, and a dark color band over a light color"; Registration No. 5067692 is directed to "longitudinal ribbing and a dark color band over a light color on the outer sole edge, welt stitching, and a tab located at the top back heel of footwear"; and Overall visual impression of welt stitching, a grooved sole edge, an angled heel, a platform sole, the "Quad" cleat pattern, and a heel loop corresponds to the "Jadon Design." *See e.g.*, Dkt. No. 189 at 2 (Motion for PI); *see, e.g.*, Dkt. No. 189-1, Exhibit D and E (below).



**Dkt. No. 189-1, Exhibit D (Specimen)**



**Dkt. No. 189-1, Exhibit E ("Jadon")**

In 2019, defendant sold four styles of shoes that a jury found infringed plaintiff's protected trade dress. Dkt. No. 189 at 5; *see* Dkt. No. 189-1 Exhibits F-I. Specifically, on August 9, 2021, the jury returned the following verdict in plaintiff's favor:

> (1) Regarding plaintiff's first claim (Infringement under 15 U.S.C. § 1114(1)): that plaintiff's '751,'689, and '692 registrations are valid and protectable, that plaintiff owns the marks, and that defendant infringed these registered marks. *Id.* at p. 2-3.
>
> (2) Regarding plaintiff's second and third claims (Unfair competition under 15 U.S.C. § 1125 and California common law): that defendant used trade dress similar to the overall visual impression of the Jadon Design without the plaintiff's consent in a manner that is likely to cause confusion among ordinary consumers and the general public as to the source, sponsorship, affiliation, or approval of the defendant's goods. *Id.* at p. 4-5.
>
> (3) Regarding plaintiff's fourth and fifth claims (Trademark Dilution under 15 U.S.C. §1125(c) and California Business & Professions Code § 14247): that the '689 trade dress, '692 trade dress, and '751 trade dress, and Jadon Design are famous, and defendant diluted the '689 trade dress, '692 trade dress, and '751 trade dress, and Jadon Design. *Id.* at p. 5-6.

Dkt. No. 183 at p. 2-3 (Jury Verdict Form).

Plaintiff requests the following language for a permanent injunction:

> the court permanently enjoin ITX and its officers, directors, servants, employees, attorneys, agents, representatives, partners, joint venturers, corporate affiliates, successors, assigns, and all persons in active concert or participation with it, from:
>
> A. designing, manufacturing, importing, shipping, delivering, selling, marketing, displaying, advertising, or promoting footwear in the United States that use any of the following trade dress1 ("Dr. Martens Trade Dress"), alone or in combination:
>
> 1. Registration No. 2,437,751 (a combination of yellow stitching in the welt area, and a two-tone grooved sole edge);
> 2. Registration No. 5,067,689 (a sole edge including longitudinal ribbing, and a dark color band over a light color);
> 3. Registration No. 5,067,692 (longitudinal ribbing and a dark color band over a light color on the outer sole edge, welt stitching, and a tab located at the top back heel of footwear);
> 4. The overall visual impression of welt stitching, a grooved sole edge, an angled heel, a platform sole, the "Quad" cleat pattern, and a heel loop (the "Jadon Design"); and/or
>
> B. designing, manufacturing, importing, shipping, delivering, selling, marketing, displaying, advertising, or promoting footwear in the United States that use the elements of the trade dress in a manner that is a colorable imitation of or confusingly similar to the Dr. Martens Trade Dress, alone or in combination; and/or
>
> C. representing or implying, directly or indirectly, to retailers, customers, distributors, licensees, or any other customers or potential customers of the products of ITX or to any corporate affiliate of ITX (collectively, "ITX Products") that ITX Products originate with, are sponsored, endorsed, or licensed by, or are otherwise associated or affiliated with AirWair or Dr. Martens.

(Dkt. No. 189 at 2-3).

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs the issuance of injunctions. To obtain a permanent injunction, a plaintiff must satisfy four factors: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citations omitted).

The Lanham Act (15 U.S.C. §§ 1116(a), 1125(c)(1)) provides for injunctive relief for claims of trademark infringement, unfair competition, and trademark dilution. California statute (Cal. Bus.

& Prof. Code § 14247(b)) provides for injunctive relief for claims of trademark dilution. More particularly, "[i]injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

## DISCUSSION

### I. Irreparable Harm

Under the Lanham Act, plaintiff is "entitled to a rebuttable presumption of irreparable harm upon a finding of a violation" of "any right of the registrant" of a registered mark or under 15 U.S.C. 1125. 15. U.S.C. § 1116 (West).[1] Regarding voluntary cessation, defendant "bears the formidable burden" of demonstrating voluntary compliance by showing 'it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal citations omitted); *see Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986) (internal citations omitted) ("any doubt in respect to the extent [of relief] thereof must be resolved in its [plaintiff's] favor and against" the defendant).

"Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001); *see also OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 602 F. App'x 669, 672 (9th Cir. 2015). Further, evidence of "extensive and targeted advertising and unsolicited media" can demonstrate plaintiff has "built a specific reputation" with "intangible benefits," and "evidence of loss of control over business reputation and damage to goodwill [can] constitute irreparable harm" *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756 (9th Cir. 2018) (internal citations omitted).

---

[1] Irreparable harm is presumed upon a finding of a violation of the Lanham Act as of Dec. 27, 2020. 15 U.S.C. 1116(a) (West); *see* J. Thomas McCarthy, McCarthy on McCarthy on Trademarks and Unfair Competition § 30:2 (5th ed. 2019). Prior to this amendment, the Ninth Circuit did not "presume[] irreparable harm upon a finding of infringement." *Daimler AF v. A-Z Wheels LLC*, 498 F. Supp. 3d 1282, 1292 (S.D. Cal. 2020), citing *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011).

United States District Court
Northern District of California

Plaintiff argues irreparable harm here is both presumed and evidenced. Dkt. No. 189 at 7. Plaintiff refers to evidence at trial including, for example:

- **Damien Wilson testimony**: "I've had -- personally had an experience of seeing somebody walking in a -- you know, for want of a better word, a "knockoff" pair of Doc Martens across the street, with the sole hanging off because it was glued on and not made of great materials. And I think if people mistake that as a pair of Dr. Martens, that's not a great thing." (Trial Transcript 260:3-10));
- **Leslie Lane testimony**: "[I]t's a very hard thing for me to talk about because that would be incredibly damaging to the brand. Tremendously damaging, yeah. Yeah, a couple of years of mass sales … and the brand would be nowhere" (Trial Transcript 498:23-499:2));
- **News article stating** "Dr. Martens are a style icon that has endured for over 50 years. They've been worn by everyone from Kanye West, to Cardi B. to the Dalai Lama, and even Pope John Paul, II, when the Vatican placed an order for the famous eight-eyelet boot in black, white, and navy leather" (Trial Transcript 246:25-246:5));
- **Leslie Lane testimony** that plaintiff spends around $8.5million per year on marketing (Dkt. No. 172 at page 135 lines 15-17 of 192 (Trial Transcript 306:15-17).

*See generally*, Dkt. No. 189 at 8-10.

Defendant counters that plaintiff has not established irreparable harm because (i) defendant has ceased selling the products in question and sales are not likely to recur and (ii) plaintiff was not awarded monetary damages and has only evidenced speculative harm. Dkt. No. 193 at 7-9.

Plaintiff refers to *Gianni Versace*, wherein the defendant was found to have harmed plaintiff's brand by causing customer confusion and negative reviews, and *BMW of N. Am.* , wherein the defendant intended to continue selling counterfeit goods, as instances in which injunctions were granted. Dkt. No. 189 at 3;, citing *Gianni Versace, S.p.A., v. Versace 19.69 Abbigliamento Sportivo SRL*, 328 F. Supp. 3d 1007, 1023, 1032 (N.D. Cal. 2018), and citing *BMW of N. Am., LLC v. Rocco*, 2020 WL 7047318, at *12 (C.D. Cal. Nov. 18, 2020). While defendant's conduct may not reach the level of conduct in *Gianni Versace* and *BMW* (Dkt. No. 193 at 8), this does not rebut the presumption of irreparable harm. Nor does defendant's reference to a lack of money damages or speculative harm rebut the presumption. Further, defendant has not submitted evidence to satisfy the "formidable burden" of showing voluntary cessation is effective or that infringement "could not reasonably be expected to recur," where defendant appears to still have the capability to sell and/or

market infringing products. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

The Court finds plaintiff is entitled to a presumption of irreparable injury, and defendant has not provided sufficient evidence to rebut this presumption of irreparable harm.

**II. Inadequacy of Monetary Damages**

The Lanham Act sets forth that "the owner of a famous mark . . . shall be entitled to an injunction against another person who . . . commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment . . . regardless of the presence or absence of actual or likely confusion, of competition, **or of actual economic injury**." 15 U.S.C. 1125(c)(1) (West) (emphasis added). "A loss of exclusivity traditionally has been addressed through injunctive relief." *Brocade Communications Systems, Inc. v. A10 Networks, Inc.*, No. C 10-3428 PSG, 2013 WL 140039 at *4 (N.D. Cal. Jan. 10, 2013); *see also Presidio Components, Inc. v. American Technical Ceramics Corp.*, 702 F.3d 1351, 1362 (Fed. Cir. 2012) ("the axiomatic remedy for trespass on property rights is removal of the trespasser"); *see also Converse, Inc. v. International Trade Commission Skechers U.S.A., Inc.*, 909 F.3d 1110, 1124 (Fed. Cir. 2018) (evidence of reputational harm is not required for a finding of infringement)..

The Lanham Act does not require economic injury for injunctive relief. 15 U.S.C. 1125(c)(1) (West). The Lanham Act further provides plaintiff is entitled to an injunction where dilution is likely. *Id*. Here, the jury found for plaintiff regarding plaintiff's fourth and fifth claims for trademark dilution. Dkt. No. 183 at p. 5-6. Further, plaintiff has suffered a loss in exclusivity of plaintiff's trade dress due to infringement by defendant.

The Court therefore finds remedies at law are inadequate for plaintiff's injuries including a loss of exclusivity of plaintiff's valid and protectable trade dress.

**III. Balance of Equities**

As set forth in *Polo Fashions*, "[i]f the defendant[] sincerely intend[s] not to infringe, the injunction harms them little, if they do, it gives [the plaintiff] substantial protection." *Polo Fashions,*

*Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986).

Plaintiff asserts that, without an injunction, it would be "at risk of future expensive litigation to protect against harm to its brand and reputation." Dkt. No. 189 at 12. Plaintiff also asserts defendant will suffer no harm if an injunction issues unless defendant infringes plaintiff's trade dress. *Id.* Defendant argues there is no evidence defendant has, or will, "flood the market" with infringing goods, and plaintiff's alleged hardship future lawsuits is unsupported by evidence. Dkt. No. 193 at 13. The Court agrees.

The balance of equities favors plaintiff. Defendant will experience little to no hardship so long as defendant does not infringe and without an injunction plaintiff would be "needlessly vulnerable to future infringement necessitating additional litigation." *Brighton Collectibles, Inc. v. Coldwater Creek, Inc.*, 2009 WL 10671767 at *2 (S.D. Cal. Jan. 23, 2009).

**IV. Public Interest**

The prevention of confusion, protection of intellectual property rights, and protection of the public from counterfeit goods are in the public interest. *See Chanel, Inc. v. Hsiao Yin Fu*, No. 16-cv-02259-EMC, 2017 WL 1079544 at *4 (N.D. Cal. Mar. 22, 2017); *see Amazon.com, Inc. v. Expert Tech Rogers Pvt. Ltd.*, No. 20-cv-07405-PJH (JSC) , 2021 WL 4461601 at *10 (N.D. Cal. Sept. 22, 2021) ("protecting trademark holders' rights"); *see Deckers Outdoor Corp. v. Pac. Harbors, LLC*, No. 3:19-cv-01587-YY, 2020 WL 5269437 at *8 (D. Or. August 10, 2020) ("preventing confusion as to the validity of a product").

Plaintiff argues it has established a likelihood of confusion as evidenced by the jury verdict finding a "likelihood of consumer confusion" caused by defendant's actions. Dkt. No. 189 at 12. Plaintiff further argues a permanent injunction would aid in avoiding confusion, encouraging fair competition, keeping infringing products out of the marketplace, and protecting consumers. *Id.*

Defendant counters that plaintiff has "proffered no evidence of actual confusion," and that "there is no possibility that confusion will arise in the future." Dkt. No. 193 at 13-14.

Again, the Court agrees with plaintiff. The jury was clear in its finding of a likelihood of

consumer confusion. A permanent injunction, here enjoining defendants from infringing plaintiff's trade dress, would not disserve the public interests of consumer protections, trademark protections, and prevention of customer confusion.

**V. Scope of Injunctive Relief: Activity and Entities**

Federal Rule of Civil Procedure 65(d)(1) requires every injunction "(A) state the reasons why it was issued; (B) state its terms specifically, and (C) describe in detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). Plaintiff requests a permanent injunction preventing enjoined parties from "designing, manufacturing, importing, exporting, distributing, licensing, selling, marketing, advertising, promoting or offering for sale in the United States" footwear that uses "elements of any of [plaintiff's] trade dress," "colorable imitation[s]," or "confusingly similar" footwear. Dkt. No. 189-2 at 3-4 (Plaintiff's Proposed Order). Defendant argues and injunction must (1) be narrowly tailored regarding the actives that are enjoined and (2) apply only to ITX. Dkt. No. 193 at 14.

**Activities Enjoined**. In addition to enjoining defendant from infringing plaintiff's registered marks, an injunction can prohibit "colorable imitations" of, or products "confusingly similar to," plaintiff's valid and protectable trade dress. *See Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1323-24 (9th Cir. 1997) (referring to "exact copies" and "colorable imitations" of the plaintiff's trade dress); *see Toyo Tire & Rubber Co. v. Hong Kong Tri-Ace Tire Co.*, 281 F. Supp. 3d 967, 987 (C.D. Cal. 2017) (finding a violation of judgement based on products "confusingly similar" to the plaintiff's trade dress); *see Toyo Tire & Rubber Co.*, 281 F. Supp. 3d at 979 ("Trade dress protection is generally broader than trademark protection."). Plaintiff can only "prevent competitors from using the items in a way, that viewed as a whole, is likely to confuse consumers." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 843 n.7 (9th Cir. 1987); *see also Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 1259) ("Trade dress is the composite tapestry of visual effects" and "must be examined as a whole, not by its individual constituent parts.").

In viewing plaintiff's trade dress, each design as a whole is protected, as defined by the '689 Registration, the '692 Registration, the '751 Registration, and the Jadon design. Combinations of any of these four designs are also protected to the extent that a potentially infringing product is likely to cause confusion with plaintiff's trade dress. The elements of each design, however, are not protected by themselves, nor would the elements necessarily be protected as included in some different combination (*e.g.*, a new design that is not confusingly similar). Accordingly, the Court finds the scope of the injunction shall include plaintiff's trade dress, colorable imitations, and products confusingly similar to any of plaintiff's protected designs.

**Applicable Entities**. As set forth by FRCP 65(d)(2), only "(A) the parties, (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)" are bound by an injunctive order if they "actual notice of it by personal service or otherwise." Fed. R. Civ. P. 65(d)(2).

Regarding an existing injunction, "[a]n injunction binds a non-party only if it has actual notice and either 'abets the enjoined party' in violating the injunction or is 'legally identified' with the enjoined party." *Al Otro Lado v. Wolf*, 497 F. Supp. 3d 914, 929 (S.D. Cal. 2020). As stated in *Netlist*, an entity in privity with a defendant can be held accountable for terms of an existing injunction "even if not specifically named in the injunction," and an injunction may be enforced against such an entity if the entity "act[s] in concert with the accused [] infringer []." *Netlist Inc. v. Diablo Technologies Inc*, No. 13-cv-05962-YGR, 2015 WL 163434 at *1 (N.D. Cal. Jan. 12, 2015). Thus, entities that are not named as parties, nor named in an injunction, may be bound by the terms of the injunction. *See, e.g.*, J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:14 (5th ed. 2019) ("Nonparties residing outside the territorial jurisdiction of the court, such as those in another nation, can be held responsible for violating the court's injunction if they have notice and actively aid and abet a party violating the court order."); *see, e.g., H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842 (7th Cir.) ("even those without any other contact with the forum"); *see, e.g., N.L.R.B. v. Sequoia Dist. Council of Carpenters, AFL-CIO*, 568 F.2d 628, 633-34 (9th Cir. 1977) (An entity having notice may be subject to contempt if it is "legally

United States District Court
Northern District of California

identified with" or "in active concert or participation with" a party.).

For example, in *Nguyen v. FundAmerica*, the District Court enjoined defendants "including their principals, agents, subsidiaries, affiliates, predecessors, successors, assigns, attorneys, employees, and all those persons with whom they act in concert and participation who receive knowledge of this Order." *Nguyen v. FundAmerica, Inc.*, No. C 90 2090 MHP, 1990 WL 165257, at *2 (N.D. Cal. Aug. 21, 1990) (emphasis added). In a further example, in *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, the District Court enjoined defendants and "its successors, assigns, officers, agents, servants, employees, attorneys, and persons in active concert or participation with them (including any affiliated entities), who have actual notice of this injunction." *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. C 10-3428 PSG, 2013 WL 890126, at *12 (N.D. Cal. Jan. 23, 2013) (emphasis added). In a still further example, in *Facebook v. Power Ventures*, the District Court enjoined defendants and "their agents, officers, contractors, directors, shareholders, employees, subsidiary companies or entities, affiliated or related companies and entities, assignees, and successors-in-interest, and those in active concert or participation with them." *Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 785 (N.D. Cal. 2017), aff'd, 749 F. App'x 557 (9th Cir. 2019) (emphasis added). Entities identified as "successors" and "assigns" may also be properly referred to by an injunction, even though these terms are not explicitly recited in FRCP 65(d)(2). *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1298 (9th Cir. 1992), citing *Regal Knitwear v. NLRB*, 324 U.S. 9, 14-15, 65 (1945); citing *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179, (1973).

Here defendant argues corporate affiliates should not be bound by a permanent injunction. Dkt. No. 193 at 19. For example, defendant refers to the language of Fed. R. Civ. Pro. 65(d)(2), wherein "affiliates" is not included. *Id.* at 20. Further, defendant argues its corporate affiliates Pull & Bear and Inditex cannot be bound by an injunction because Pull & Bear is a "sister company" and Inditex is a parent company. *Id.*

Plaintiff counters that defendant and Inditex are in privity. Dkt. No. 197 at 13. Plaintiff requests defendants be enjoined "as well as all of their respective officers, directors, servants,

employees, attorneys, agents, representatives, partners, joint venturers, corporate affiliates, successors, assigns, and all persons in active concert or privity or in participation with any of the foregoing." Dkt. No. 189-2 at 3 (Prop. Order).

Here, claims against Pull & Bear were previously dismissed based on a lack of personal jurisdiction. Dkt. No. 42 (Order Granting Motion to Dismiss). While Pull & Bear is not a party to the case, any injunction issued by this Court would be enforceable against such entities to the extent that they have notice and are legally identified with, or aiding and abetting, defendant.

In sum, the Court finds that the scope of an injunction should be limited to plaintiff's protected trade dress, as well as colorable imitations and confusingly similar products. Also, the Court finds that "affiliates" and other entities related to defendant can be referred to in the language of an injunction, based on other decisions in the Ninth Circuit.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby grants plaintiff's motion for a permanent injunction, specifically:

1. The permanent injunction provisions of this Judgment and Order apply to defendant ITX, as well as all of its respective officers, servants, employees, attorneys, successors, assigns, and all persons (including directors, representatives, partners, joint venturers, affiliates, and related entities) in active concert or privity or in participation with ITX and who have or receive actual notice of this Judgment and Order (collectively, "Enjoined Parties").
2. The Enjoined Parties are hereby permanently enjoined and restrained from directly or indirectly doing any of the following:
   a. designing, manufacturing, importing, exporting, distributing, licensing, selling, marketing, advertising, promoting or offering for sale in the United States the ITX Accused Footwear or any footwear that uses any of the following trade dress ("Dr. Martens Trade Dress"):
      i. Registration No. 2,437,751 (a combination of yellow stitching in the welt area, and a two-tone grooved sole edge);



United States District Court
Northern District of California

ii. Registration No. 5,067,689 (a sole edge including longitudinal ribbing, and a dark color band over a light color);

iii. Registration No. 5,067,692 (longitudinal ribbing and a dark color band over a light color on the outer sole edge, welt stitching, and a tab located at the top back heel of footwear); and

iv. The overall visual impression of welt stitching, a grooved sole edge, an angled heel, a platform sole, the "Quad" cleat pattern, and a heel loop (the "Jadon Design"); and/or

b. designing, manufacturing, importing, shipping, delivering, selling, marketing, displaying, advertising, or promoting footwear in the United States that is a colorable imitation of or confusingly similar to the Dr. Martens Trade Dress; and/or

c. representing or implying, to retailers, customers, distributors, licensees, or any other customers or potential customers of the products of ITX or any corporate affiliate of ITX (collectively, "ITX Products") that ITX Products originate with, are sponsored, endorsed, or licensed by, or are otherwise associated or affiliated with AirWair or Dr. Martens.

**IT IS SO ORDERED**.

Dated: November 15, 2021

SUSAN ILLSTON
United States District Judge



United States District Court
Northern District of California